**Steven JUN and Susan Jun,
Plaintiffs–Respondents,**

v.

**James MURPHY, d/b/a Metro Business
Brokers, Defendant–Appellant.**

No. 53972.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 29, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 4, 1989.

Application to Transfer Denied
Feb. 14, 1989.

Harry F. Swanger, St. Louis, for defendant-appellant.

Jeffress B. Hailand, Clayton, for plaintiffs-respondents.

SIMEONE, Senior Judge.

This is an appeal by the defendant-appellant, James M. Murphy, d/b/a, Metro Business Brokers from a judgment of the circuit court of St. Louis County entered on September 25, 1987 awarding plaintiffs, Mr. and Mrs. Steven Jun, $10,000 for the return of earnest money they deposited for the purchase of a business, and denying Murphy's counterclaims for damages and attorney fees.

In December, 1984, Steven Hong Jun and his wife, Susan, entered into an "Offer To Purchase" with Nildey Corporation through its vice president, Harriet Yedlin, to purchase Christy Fabric Care Center, a dry cleaning laundry business located in the City of St. Louis. The purchase price was $105,000 and closing was to take place on January 25, 1985. A number of conditions or "addendum" were made part of the contract to purchase.[1]

On January 10, 1985, the plaintiffs notified Harriet Yedlin concerning the sale of the laundromat of their intent "not to consumate [sic] the purchase of Christy Fabric Center at on Jan. 24, 1985 as heretofore agreed...."

The earnest money was not returned after demand and after notice to defendant of

---

1. Included within the conditions were: Buyer to negotiate lease with owner of building to their satisfaction; list of equipment and furniture to be approved by buyer [Jun] and seller [Yedlin]; contract subject to purchasers obtaining a loan on residence; etc., sellers to provide an indemnity agreement for buyer's approval.

the Juns' election not to close. On February 20, 1985, plaintiffs filed their petition in one count in the circuit court of St. Louis County alleging the contract, the deposit of $10,000 earnest money on December 20, 1984, the contingencies and that said "contingencies were not met by the closing date," and prayed recovery for the $10,000 earnest money.

On May 1, 1985, appellant answered the petition denying the allegations and asserting that the Suns notified Murphy in writing that they refused to "consummate the purchase" and thereby "forfeited" the earnest money funds.[2] This answer was filed by appellant's attorney, at the time, Morris K. Ebeling, Esq.

The cause was set on the docket but removed therefrom. On August 14, 1987, plaintiffs filed a first amended petition in three counts. Count I sought recovery of the earnest money because certain contingencies were not met, and prayed return of the earnest money; Count II alleged that a document showing that certain contingencies were met was fraudulent and prayed damages; Count III alleged that the contingencies were so uncertain that the buyers' obligations must fail for indefiniteness.

On September 8, 1987, Murphy answered the first amended petition. He denied the allegations in the three counts and then (1) sought an order of interpleader; (2) asserted certain affirmative defenses in that plaintiffs-Sun forfeited the earnest money and had purchased another laundromat while the contract was in existence; (3) asserted a counterclaim for damages in the amount of $1,500 and a counterclaim for attorney's fees in the amount of $7,500; and (4)(a) asserted that Morris K. Ebeling, the former attorney for Murphy who now resides outside Missouri is an "indispensable party" to the action because he holds the $10,000 in escrow and has possession of all original files, records and documents and (b) asserted that one Ronald Valicoff is a partner with Murphy. Murphy asserted that both Ebeling and Valicoff are "indispensable" parties to the proceeding and must be joined.

This answer was followed by two motions filed by Murphy—one filed on September 9, 1987 and one filed on September 22, 1987. The first motion sought an order "Joining Persons Needed For Just Adjudication" pursuant to Rule 52.04. He moved for an order joining Ebeling and Valicoff, both of whom resided outside Missouri. He alleged that without Ebeling, complete relief cannot be accorded among the parties and no final judgment can be entered which will do justice. He contended that Ebeling has the $10,000, and has possession of files and records and is the party who defended the initial lawsuit and prepared the original pleadings, and is privy to the reasons and circumstances surrounding the plaintiffs' repudiation of the contract. Murphy further alleged in this motion that (1) Valicoff should be made a party because he is a partner of Murphy, and (2) Harriet Yedlin also claims an interest in the earnest money held by Ebeling. Hence Murphy prayed that all three of these persons be made parties.

Then on September 22, 1987, appellant Murphy renewed this motion—before the trial court—"Motion For Order Joining Persons For Just Adjudication (Indispensable Parties) and/or For Interpleader Cross–Claims Pursuant to Rule 52.04, Rule 52.07 and Rule 55.27(g)(2)(3)." In this motion appellant moved for an order to require Ebeling, Valicoff and Yedlin to appear in the cause. The reasons therefor were that (1) on September 10, a pretrial conference was held with the presiding judge who rejected defendant's request to add parties, (2) Harriet Yedlin has demanded one-half of the earnest money, (3) Ebeling, who holds the earnest money, has controlled its distribution and he has the original file, (4) Valicoff, a partner, is the party who handled the sale and as a partner, should be joined, and (5) the two new counts in the amended petition (fraud and uncertainty)

**2.** Paragraph 15 of the contract to purchase states "Buyer agrees that if he should fail or refuse to complete this transaction after timely acceptance by the seller, then any funds or deposit with the broker will be forfeited, and, at broker's option, shall be split 50% to one seller and 50% to the broker."

have opened up a "pandora's box" which "absolutely" necessitates these parties, and because counsel has been unable to adequately defend his client without a file, records and notes, these additional parties should be joined in the interests of justice, or that he should be allowed to "interplead"[3] them for "cross-claims."

Trial was held on September 23 and 24, 1987 before the court without a jury.

At the beginning of the hearing, the court referred to the motion adding additional defendants. The court stated that the motion had been heard by the presiding judge and denied twice. Counsel renewed the motion believing it to be jurisdictional. The court stated its position that the Presiding Judge had denied the request and "I feel as though I'm bound by that. So we will proceed...." In effect, therefore, the trial court also denied this motion.

Mrs. Susan Hea Jun testified at the hearing. She testified that she and her husband negotiated to purchase the Christy Fabric Care Center, a dry cleaning and laundromat business. She and her husband dealt with "Murphy and Ron Valicoff, but mainly with Mr. Jim Murphy." Murphy did business under the name of Metro Business Brokers. Mrs. Jun identified the contract to purchase and acknowledged the signatures. Mrs. Jun read the contingencies in the contract including the "list of equipment and furniture to be approved by buyer and seller and marked Exhibit 'A'." She acknowledged that she and her husband "put down" $10,000 by personal check. Mrs. Jun testified that certain contingencies were fulfilled but others were not. The Juns did obtain a loan on their home; they negotiated a lease with the owner of the building to their satisfaction. Mrs. Jun admitted that during the time while the contingencies were being worked on, she and her husband "entered into negotiations with [other] prospective sellers of laundromats" and placed earnest money on two. As to the Christy contract, the

Juns, although they requested it several times, never received the "list of equipment," showing the age and date of purchase of the equipment. The contract of purchase referred to a list of equipment as Exhibit A, but there was none attached and the Juns never saw one.

On cross-examination Mrs. Jun admitted looking at other businesses but made no offer "to Duba's," [a prospective seller] in December, 1984, but did so in January, 1985, to close in March, 1985. She admitted writing to Yedlin at Murphy's request indicating that the Juns would not close in January. This was done because the Juns never got a list of the equipment. She also testified that the Juns did not see the books of the business.

During the hearing, counsel for Murphy stated that he had requested a copy of the contract that the Juns made with Duba and indicated that he would request leave to supplement the record with a subpoena to obtain a copy. The court replied that the Juns agreed that they closed with the Dubas for close to $125,000 so "I don't understand the need to supplement the record with evidence that's been admitted ... I'm not going to continue this case from time to time." The court continued—"what possible relevance would there be for a copy of the contract for a totally completely separate business. What relevance would there be under this agreement?" The court, therefore, denied counsel's request.

Harriet Yedlin testified that she and her son owned Christy Fabric Care Center, that she listed the business for sale with Metro and Mr. Murphy and that he brought to Yedlin's attention the Juns as potential buyers. It was her testimony that a contract to purchase was finally entered into "predicated" upon "certain things being satisfied." Her testimony differed from Mrs. Jun's. Mrs. Yedlin testified that the Juns examined and approved the list of equipment. A handwritten exhibit was introduced to show that certain of the dis-

---

3. Although not mentioned in this renewed motion, in the earlier motion, Murphy alleged that Ebling has the earnest money on deposit, and it has also been claimed by Yedlin, the seller, hence *he*, Murphy, prays that they be required to interplead with each other and to determine which is entitled to the earnest money.

puted contingencies were "released" and removed by the signatures of the Juns. Mrs. Yedlin did not know whose handwriting it was in. But, this exhibit, according to the Juns was not a correct copy and may have been forged. Mrs. Jun denied ever seeing such a list and she and her husband denied it was their signature on the exhibit. Mrs. Yedlin, however, testified that the document was signed on January 4, 1985 "after they saw the books."

Mr. Murphy testified. He indicated that the Juns came into the office and discussed certain types of business they had for sale. The Juns were interested in the Christy Fabric Care Center. An appointment was made and the Juns examined the premises. The Juns made an offer on December 8, 1984. The parties met sometime in December or January, with the owner of the building and agreed to a lease. The Juns requested the documents relating to utilities, and expenses. The parties met with Yedlin to discuss the matters including the list. The list was "gone over" item by item. Sometime after the meeting, Mrs. Jun called and said "they" were not going to go through with the deal; that "unbeknowing to her, her husband had entered into a contract to purchase another laundromat," and that her husband felt he couldn't "get along with the women."

On January 11, 1985, when Murphy realized that the deal was "dead," he deposited the escrow money of $10,000 in "Maurice K. Ebeling's trustee account." The escrow check was made out to Ebeling.

Later Murphy sold the Christy business for the same amount the Juns were willing to pay for it and "because the aggravation we had caused Mrs. Yedlin, ... we received a seventy five hundred dollar commission" rather than the $10,500 commission from the Jun contract. Murphy also testified that he is required to pay his counsel.

On September 25, 1987, the trial court entered judgment in favor of plaintiffs against "James Murphy d/b/a" for $10,000 on Count I of the amended petition because the "greater weight of the credible evidence supports this finding," entered judgment for defendant-appellant on Counts II

and III and entered judgment for the plaintiffs on the defendant's counterclaim for damages and attorney's fees.

In due time Murphy appealed.

On appeal, appellant contends that the trial court erred in (1) "refusing to rehear and/or review the denials of the presiding judge of Defendants' Motion" to join additional parties; (2) denying his request to obtain a copy of the sales contract that the Juns entered into for another laundromat [Duba] signed after the parties met; (3) finding in favor of plaintiffs on Count I for the earnest money because the finding is against the weight of the evidence, and (4) denying defendant's counterclaim for damages and attorney's fees.

■ This is a court-tried case. Our review is governed by the settled principles of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) that the judgment of the trial court "will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." An appellate court should set aside a judgment on the ground that it is against the weight of the evidence only "with caution and with a firm belief that the decree or judgment is wrong."

Tested by these principles of appellate review we affirm the judgment of the trial court.

As to the point that the trial court erred in refusing to review the denials of the motion to add parties, the trial court in effect overruled the motion, as did the presiding judge. We find no error. Appellant contends that (1) Mrs. Harriet Yedlin, the seller, is a necessary or indispensable party because she has "consistently demanded at least one-half" of the earnest money, (2) that Ebeling is such a party because he holds the escrow money and controls its distribution and also holds the original files and records, and (3) Valicoff is necessary or indispensable because he is a "partner" and handled the sale of the business.

We disagree. Under Rule 52.04, none of these persons are indispensable. *State ex*

*rel. Emcasco Ins. Co. v. Rush*, 546 S.W.2d 188, 195 (Mo.App.1977). Complete relief may be accorded among those already parties, and none of the parties claims such an interest in the subject of the action and is so situated that the disposition of this action may impair or impede his or her ability to protect the interest or leave the parties subject to a "substantial" risk of incurring multiple or inconsistent obligations. Certainly the absent parties are not indispensable in the sense that the court cannot determine the action in equity and good conscience without them. Their rights are not so entangled with the others so that the court cannot grant any relief.

■ As to Mrs. Yedlin, there is nothing in the record to indicate that she has consistently demanded one-half the earnest money; she sold her business, she paid a lesser commission.[4] Any possible claim is conjectural. Ebeling is not an indispensable party and is not essential to the adjudication of this action. Plaintiffs' claim is in contract for the return of the earnest money. Complete relief can be accorded the parties in the absence of Ebeling. The fact that he may have files and records is irrelevant to this action. Valicoff, a "partner"[5] is not an indispensable party. It is a fundamental principle of joint obligations that a partner is jointly and severally liable and is not a necessary nor an indispensable party to an action brought against partners. Section 358.150, R.S.Mo.1986; *Smith v. Wohl*, 702 S.W.2d 905, 910–911 (Mo.App. 1986).

■ As to interpleader, it is clear that this defendant-appellant is not entitled to that remedy. In his motion, appellant stated that Ebeling has on deposit the earnest money which has "also" been claimed by Mrs. Yedlin and that therefore Ebeling and Yedlin be required to interplead with "each other." Under these circumstances, appellant does not satisfy the essential ingredients and elements of Rule 52.07—persons

having claims against the one seeking interpleader may be joined and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability on the same obligation. *Plaza Express Company v. Galloway*, 365 Mo. 166, 280 S.W.2d 17, 24 (banc 1955); *Shaw v. Greathouse*, 296 S.W.2d 151 (Mo. App.1956).

Appellant is not exposed to double or multiple liability on the same obligation from Ebeling and Mrs. Yedlin. Interpleader is not the proper remedy.

■ As to appellant's second point that the court erred in denying him additional time to secure a copy of another contract which had been entered into by plaintiffs and in denying his request to obtain a copy of the Duba contract, the trial court at the end of the hearing concluded that Mrs. Jun admitted entering into an agreement with the Dubas, that the court was not going to continue the case and that a totally separate agreement would be irrelevant.

The trial court has broad discretion in determining the relevancy of evidence and in admitting or rejecting evidence on the grounds of relevancy. *Commercial Inv. Co. v. Employers Mut. Cas. Co.*, 680 S.W. 2d 397, 402 (Mo.App.1984); *Riney v. Zenith Radio Corp.*, 668 S.W.2d 610, 611 (Mo.App. 1984). Certainly the granting of a continuance is within the trial court's discretion. *M.P. Industries, Inc. v. Axelrod*, 706 S.W. 2d 589, 594 (Mo.App.1986).

We find no prejudicial error as to this point.

■ Appellant's third point must be denied. He contends that the court erred in awarding judgment for the plaintiffs because the judgment is against the weight of the evidence. We find no error.

The trial court is the judge of credibility. The court may believe or disbelieve witnesses. Under the evidence, the court could well conclude that the contingencies

**4.** Appellant relies upon *Roberts v. Griggs*, 210 S.W.2d 753 (Mo.App.1948), but that case is not decisive because both the purchaser and vendor claimed money in the hands of broker. The other cases relied upon are inapposite.

**5.** There is nothing in the record to indicate that Valicoff is a partner.

listed in the addendum to the contract of purchase had not been complied with so that the Juns were justified in abandoning the contract of purchase before the time for closing. Mrs. Jun testified that no list of equipment was ever given or turned over although requested several times.

The appellate court is admonished by the Supreme Court not to overturn a judgment on the ground that it is against the weight of the evidence unless there is a "firm belief" that the judgment is wrong. We cannot conclude that the judgment is wrong in this respect.

■ As to appellant's last point that the court erred in denying appellant's counterclaim for damages and attorney's fees, there is sufficient evidence in the record that appellant did not suffer any substantial damages because of the failure of the contract to purchase. Appellant's company, within a short time, sold the business to another and received a commission. Although the commission was $3,000 less than would have been due, the sales price was the same and appellant voluntarily waived a part of the commission and agreed to a reduced commission.

■ As to the attorney's fees, paragraph 13 of the contract of sale provides that in case any litigation is instituted to collect any sum due broker, the buyer and seller agree to pay expenses including attorney's fees. This provision is not applicable in this case because no amount of commission was found by the trial court to be "due" to Murphy, the broker. *Cf.*, 17 Am.Jur.2d, Contracts §§ 164, 352 (1964); 7 Am.Jur.2d, Attorneys at Law, § 301 (1980). Where the party claiming the benefit of the clause necessitated the suit by the other side, the clause is not applicable. *First Atlantic Bldg. Corp. v. Neubauer Const. Co.*, 352 So.2d 103 (Fla.App.1977). In such circumstances, the American Rule, that each side shall be responsible for its own attorney's fees is to be applied.

We have examined the decisions and authorities relied upon by the appellant and find them not to be dispositive of the legal issues presented.

The judgment of the trial court is affirmed.

DOWD, P.J., and SIMON, J., concur.