Cynthia HAMILTON, Appellant,

v.

Jimmie D. HAMILTON, Respondent.

Nos. WD 48845, WD 48869.

Missouri Court of Appeals,
Western District.

Nov. 8, 1994.

Terri Gonder, Columbia, for appellant.

Elton W. Fay, Columbia, for respondent.

Before KENNEDY, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

Cindy Hamilton appeals the trial court's decree dissolving her marriage to Jimmie Hamilton. She complains that the trial court erroneously awarded physical custody of the couple's 11–year–old, severely-handicapped son to Jimmie[1] every weekend. She also complains of the trial court's rulings concern-

---

**1.** For the reader's ease, we refer to the parties by their first names.

ing child support, maintenance, property division, failure to order continued health insurance coverage and failure to award her adequate attorney fees. Jimmie cross-appeals; he complains that the trial court did not award him attorney fees. We affirm in part and reverse in part.

The couple was married on September 22, 1973. Three children were born to the marriage. The couple's third child William was severely handicapped as a result of apparent medical malpractice during his birth. William suffers cerebral palsy and scoliosis. His vision and hearing are severely impaired. He does not walk or talk. He cannot feed himself or use the toilet. He has seizures and requires 24–hour care. Cindy has been his primary caretaker since his birth.

Cindy filed for divorce on July 8, 1992, after learning that Jimmie was involved in an adulterous affair. While he and his paramour vacationed in New Orleans, Cindy obtained an *ex parte* court order prohibiting Jimmie from returning to the marital residence.

Early in the marriage, Cindy earned $300 to $350 a month working part-time. After William was born, she remained at home to care for him and the couple's two older daughters. At the time of trial, she was unemployed and had no income. She claimed monthly expenses of $2427.52.

At the time of trial, Jimmie worked in a position which required him to be out-of-town throughout the week and, at times, during the weekend, too. He participated very little in his children's upbringing. He reported his monthly salary to be $3113 and his monthly expenses to be $4490.36.

The trial court awarded Cindy and Jimmie joint legal custody of the children. It gave Cindy sole physical custody of the two older daughters and granted Jimmie "reasonable visitation." The court gave Cindy and Jim-

mie joint physical custody of William. The court granted Jimmie physical custody of William from 6:00 P.M. each Friday to 6:00 P.M. each Sunday. The court made no provisions for holidays. The court did provide that "[t]he parties may, by agreement, vary the periods of custody to accommodate their schedules and the needs of William." The court ordered Jimmie to pay Cindy $350 a month for maintenance and $781.42 a month for child support. The court gave Cindy the marital residence. It ordered the parties to split the guardian ad litem fee and costs, and it ordered Jimmie to pay Cindy's attorney fees in the amount of $2463.50.

## PHYSICAL CUSTODY OF WILLIAM

█ In her first point on appeal, Cindy contests the trial court's awarding physical custody of William jointly to her and Jimmie. She does not challenge joint legal custody, but she asserts that joint physical custody was contrary to William's best interests.

█ We must affirm the trial court's decree if it is supported by substantial evidence, is consistent with the weight of the evidence, and is a proper declaration and application of the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We should set aside the trial court's order concerning child custody on the ground that it is against the weight of the evidence only if we have a firm belief that the order is wrong. *Luther v. Vogel,* 863 S.W.2d 902, 904 (Mo. App.1993). We give a trial court's determinations in a child custody proceeding greater deference than in any other type of case. *Cornell v. Cornell,* 809 S.W.2d 869, 873 (Mo. App.1991).

Section 452.375.2 [2] requires that custody decisions be made "in accordance with the best interests of the child." The legislature has mandated eight factors which must be considered in determining what constitutes the child's best interests.[3]

2. All statutory references can be found in RSMo Cum.Supp.1993.

3. They are: "(1) The wishes of the child's parents as to his custody; (2) [t]he wishes of a child as to his custodian; (3) [t]he interaction and interrelationship of the child with his parents, his siblings, and any other person who may significant-

ly affect the child's best interests; (4) [t]he child's adjustment to his home, school, and community; (5) [t]he mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the

Cindy first contends that the trial court erred in not finding a pattern of domestic violence. Had it done so, it would have had an obligation to make findings of fact and conclusions of law, as required by § 452.375.2(5), explaining why it awarded joint physical custody to an abusive parent. Cindy notes that at trial Jimmie admitted assaulting her twice. The first time occurred before William's birth when Jimmie admitted wrestling with her. "[W]e both fell down," he said. "It was over in a matter of seconds, probably." The other incident occurred on August 10, 1991, when Jimmie was intoxicated and grabbed Cindy's throat while she held William. Their daughter called police officers who removed Jimmie from the house. We cannot agree that two incidents occurring years apart during a 20–year marriage, in themselves, constituted a "pattern of domestic violence."

■■■ To show a pattern of domestic violence, Cindy would have had to establish that the two incidents were representative of Jimmie's typical behavior. She did not claim that those incidents represented a pattern. Although she did aver a pattern of alcohol abuse, she did not establish a pattern of violence. She testified that "even early on in our marriage the man . . . was verbal and abusive when he was drunk and so forth." The statute calls for a pattern of violence.[4] "Abusive" does not necessarily subsume violence.

■■■ She then complained that, contrary to § 452.375.2(3), the trial court failed to give significant weight to Jimmie's indifference toward and inattention to his son until Cindy filed for divorce. She also expressed concern that Jimmie had to work frequently on weekends and would be unable to care for William. While these factors are significant, we do not have a firm belief that the trial court was wrong in concluding that Jimmie will be able to care for his son properly. As to Jimmie's work schedule, the trial court provided that the parties could "vary the [ordered] periods of custody to accommodate their schedules and the needs of William." A trial court's award of child custody should not be disturbed unless we are firmly convinced that the welfare of the child requires some other disposition. *Lovin v. Lovin,* 787 S.W.2d 865, 866 (Mo.App.1990).

The trial court concluded from the evidence that William's interests were best served by spending weekends with his father. This certainly will assure that William frequently sees his father and will promote a continuing relationship, consistent with the public policy enunciated in § 452.375.3.[5] *Burkhart v. Burkhart,* 876 S.W.2d 675, 679 (Mo.App.1994); *Leimer v. Leimer,* 715 S.W.2d 310, 313 (Mo.App.1986).

## CHILD SUPPORT

■■■ In her second point, Cindy contends that the trial court erred in setting Jimmie's child support obligation at $781.42. Cindy submitted a Form 14 pursuant to Rule 88.01 which calculated Jimmie's presumed obligation to be $1137 a month. Jimmie's Form 14 calculation set his obligation at $864 a

child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm; (6) [t]he needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child; (7) [t]he intention of either parent to relocate his residence outside the state; and (8) [w]hich parent is more likely to allow the child frequent and meaningful contact with the other parent."

4. Section 452.375.11 also requires findings of fact concerning domestic violence, but the parties do not contend on appeal that this section is applicable.

5. That statute says, "The general assembly finds and declares that it is the public policy of this state to assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage, and that it is in the public interest to encourage parents to share decision-making rights and responsibilities of child rearing. In order to effectuate this policy, the court shall determine the custody arrangement which will best assure that parents share such decision-making responsibility and authority and such frequent and meaningful contact between the child and each parent, as is indicated in the best interests of the child under all relevant circumstances."

month. Cindy acknowledges that her Form 14 amount is not correct, but her point is that the trial court did not explain how it determined that Jimmie's child support obligation should be $781.42.

Rule 88.01(e) provides that the trial court is to presume, unless the evidence indicates otherwise, that the Form 14 amount is the proper amount of child support. The rule also provides:

It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court ... enters in the case a written finding of a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.

The trial court in this case made no such finding nor did it use the calculations provided by Cindy and Jimmie on their Form 14s.

 Use of Form 14 in calculating child support obligation of parents is mandatory. *In re Marriage of Lowe,* 860 S.W.2d 813, 818 (Mo.App.1993). The trial court's failure to use either Cindy's or Jimmie's Form 14 computations or to indicate how it calculated the child support obligation is reversible error. *In re Marriage of V.A.E. and D.A.E.,* 873 S.W.2d 262, 270 (Mo.App.1994).

Jimmie speculates that the trial court arrived at its figure by starting with his proposed Form 14 figure and reducing the obligation to recognize the two days a week Jimmie would have custody of William. Yet, to make the calculation work out, he further assumes the trial court rejected his proposed starting point of $960 in favor of $961. His Form 14 also assumed that Cindy would contribute $347 a month in income although she had not worked since William's birth.

While this was a possible explanation for how the trial court derived the amount of Jimmie's child support obligation, it still was a deviation from either party's Form 14 calculation. The rule is clear in its mandate that the trial court not deviate from a Form 14 calculation unless it finds, on the record, that the Form 14 amount is unjust or inappropriate.

 When a trial court deviates from the Form 14 amount, the record must exhibit what factors caused the deviation. *Summerville v. Summerville,* 869 S.W.2d 79, 83 (Mo. App.1993). Although the trial court does not need to complete its own Form 14, the Form 14 calculations must be apparent from the record, *Umphenour v. Umphenour,* 831 S.W.2d 764, 767 (Mo.App.1991), and the factors which caused the deviation from Form 14 must be apparent in the record. *Summerville, id.*[6]

Because we are unable to discern without much speculation how the trial court determined the amount of child support and because the trial court deviated from Form 14 without making the necessary findings, we reverse the portion of the decree awarding Cindy child support and remand the case to the trial court with directions to determine child support in compliance with Rule 88.01 and Form 14. *Bell v. Gilliam,* 852 S.W.2d 198, 202–03 (Mo.App.1993).

## MEDICAL INSURANCE

 Cindy next argues that the trial court erred in failing to order Jimmie to continue providing medical and dental insurance for the minor children and in failing to require him to pay all health expenses not covered by health insurance. Section 454.603.2 says, "With or without the agreement of the parents, the court ... may require that a child be covered under a health benefit plan. Such a requirement shall be imposed whenever a health benefit plan is available at reasonable cost through a parent's employer or union." The children are covered under Jimmie's insurance provided by his employer. Although he indicated that he would continue the insurance coverage, the trial court did not order him to do so.

Because of the mandatory language of § 454.603.2, we conclude that the trial court erred in failing to order Jimmie to continue the insurance coverage. *Pease v. Pease,* 877 S.W.2d 681, 681–82 (Mo.App.1994). Nothing

---

6. We reached the same conclusion in *Scoggins v. Timmerman,* WD 48817, slip op. at 10, — S.W.2d ——, —— (Sept. 13, 1994). Scoggins was not final when we drafted this opinion.

in the record suggests that Jimmie would be unable to continue the coverage because of unreasonable costs.

We reverse and remand the case back to the trial court for determination that the health plan currently providing insurance coverage for the minor children is available at a reasonable cost and if so, for an order requiring Jimmie to continue to provide coverage for the minor children.

## MAINTENANCE

█ Cindy next protests the award of maintenance given to her by the trial court. She asked for $470 a month. The trial court awarded her $350 a month.

Section 452.335.1 allows for an award of maintenance only if the spouse seeking maintenance lacks enough property to provide for his or her needs and "is unable to support himself [or herself] through appropriate employment." Cindy qualified for maintenance. With no permanent job and little income-producing property,[7] she lacked the resources to provide for her needs, and the trial court made such a finding.

"The trial judge is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record. . . . The trial judge, as the trier of fact, can disbelieve testimony even when uncontradicted." *In re Marriage of Lewis*, 808 S.W.2d 919, 922 (Mo.App.1991).

█ Cindy argues that the amount of maintenance should be raised to $470 a month because $350 a month is insufficient to meet her monthly expenses. The trial court is not required to meet every need of the spouse receiving maintenance when it determines the amount to be paid. *May v. May*, 801 S.W.2d 728, 732 (Mo.App.1990). The maintenance award of $350 a month was within the broad discretion given to the trial judge, and we do not discern a sufficient reason to upset it.

7. Cindy received $54 a month in interest income.

## DIVISION OF THE MARITAL ESTATE

█ Cindy complains that the trial court abused its discretion in dividing the marital estate. She asserts that the division unduly favored Jimmie.

█ Section 452.330 requires a court to "divide the marital property in such proportions as the court deems just after considering all relevant factors[.]" This statute requires the court to consider the parties' economic circumstances and their conduct during the marriage. The trial court is not required to make an equal division—only one that is equitable. *Cofer v. Price–Cofer*, 825 S.W.2d 369, 374 (Mo.App.1992).

█ The circuit court is vested with considerable discretion in determining how and in what manner the property and debts should be divided. *Tucker v. Tucker*, 778 S.W.2d 309, 312 (Mo.App.1989). We will not disturb the decision of the trial court on appeal unless the appellant establishes clearly an abuse of discretion. We presume the division of property to be correct; the party challenging it has the burden of overcoming this presumption. *Bixler v. Bixler*, 810 S.W.2d 95, 100 (Mo.App.1991).

Sufficient evidence supported the trial court's division of property in this case. Both parties presented evidence concerning their incomes and ability to pay. Although Jimmie had significantly greater earnings than Cindy, the evidence supported a finding that Cindy is able to increase her income by babysitting or some other employment. We affirm the trial court's division of property.

## ATTORNEY FEES

█ The final point concerns the trial court's ordering Jimmie to pay only a portion of Cindy's attorney fees. Section 452.355 provides that the trial court "may" allocate any portion of a party's attorney fees to the other party. The court must consider "all relevant factors including the financial resources of both parties[.]" Section 452.355.1. We will overturn the trial court's decision concerning attorney fees only if we find man-

ifest abuse of discretion. *May*, 801 S.W.2d at 734. We do not.

Cindy asks us to consider the parties' uneven financial resources in reviewing the trial court's decision. She claims that paying the remainder of her attorney's fees and half of the guardian ad litem's fee would be an "undue hardship" on her because she would be forced to liquidate a significant portion of the marital property awarded to her to pay the fees. Jimmie also appeals the award of attorney fees. He claims that Cindy's "abuse of the system" at trial and on appeal resulted in much higher attorney fees, so the trial court should have ordered her to pay $1500 of his attorney's fees.

 Although a court must look at the parties' financial resources in allocating attorney fees, that examination is not dispositive. *Plunkett v. Aubuchon*, 793 S.W.2d 554, 560 (Mo.App.1990). Generally, parties to a divorce are to pay their own attorneys' fees. *Mistler v. Mistler*, 816 S.W.2d 241, 256 (Mo. App.1991).

Whether or not to order a party to pay the other party's attorney fees is within the trial court's discretion. *Whitworth v. Whitworth*, 806 S.W.2d 145, 150 (Mo.App. 1991). We will not disturb the trial court's award of attorney fees unless the appellant makes a showing that the trial court abused its discretion. *Mabon v. Mabon*, 833 S.W.2d 488, 489 (Mo.App.1992). "To demonstrate an abuse of discretion, the complaining party bears the burden of showing the award to be clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Meservey v. Meservey*, 841 S.W.2d 240, 248 (Mo.App. 1992).

Neither party persuades us that the trial court abused its discretion concerning its award of attorney fees, guardian ad litem fees and costs.

### CONCLUSION

We affirm the trial court's ordering joint physical custody of William to both parties and the trial court's award of $350 a month in maintenance to Cindy. We affirm the trial court's division of property and its award of attorney fees, guardian ad litem fees and costs. The trial court erred in failing to determine child support in compliance with Rule 88.01 and Form 14 and in failing to order health plan coverage for the benefit of the minor children, pursuant to § 454.603.2. We remand this case to the trial court for an award of child support consistent with Rule 88.01 and Form 14 and for an order providing for health plan coverage for the couple's minor children.

All concur.