**DIVISION OF CHILD SUPPORT ENFORCEMENT, et al., Annette Morgan, Juvenile, Respondents,**

v.

**Christopher M. ESTRADA, Appellant.**

**No. WD 50712.**

Missouri Court of Appeals,
Western District.

Feb. 27, 1996.

Marilyn M. Shapiro, Kansas City, for appellant.

Kathryn E. Davis, Liberty, for respondent Division of Child Support Enforcement, et al.

Daniel E. Monagnan, Kansas City, for respondent Annette Morgan.

William E. Shull, Jr., Liberty, for respondent Juvenile.

Before ELLIS, P.J., and HANNA and SPINDEN, JJ.

ELLIS, Presiding Judge.

Christopher M. Estrada appeals a paternity decree entered by the Clay County Circuit Court finding Estrada to be the father of Martin Miguel Estrada ("Martin"). Estrada does not challenge the finding of paternity but rather contends the award of custody and the orders regarding visitation and support are erroneous.

On June 11, 1992, Martin was born out of wedlock to Annette Morgan and Estrada. The parties do not dispute that Estrada is the natural father of Martin. During Morgan's pregnancy, Morgan and Estrada lived with Estrada's parents. After Martin was born, the three of them moved into a residence where they resided together until Martin was approximately four months old. At that time, Estrada moved back into his parents' home but continued to pay the rent and utilities for the apartment where Morgan and Martin resided.

Throughout 1993 and until March, 1994, the parties adhered to an agreement whereby each party would have Martin in his or her custody half the week with no support paid by either party. According to Estrada's records, Martin stayed with him 226 days in 1993. Estrada provided clothing, diapers, food, and formula for the child while he was with him, and provided Morgan with diapers, food and formula when the child was with her. Until March, 1994, the parties had no problems with the visitation arrangement. However, in March, 1994, Morgan refused Estrada visitation, and told him he could not see the child until he obtained a lawyer.

On April 20, 1994, Morgan and the State of Missouri Division of Child Support Enforcement, through the Office of the Clay County Prosecutor, filed a petition for declaration of paternity and order of support. At the same time, Estrada was preparing to file a petition for declaration of paternity, custody, visitation and support. He filed his action on May 10, 1994. On June 27, 1994, he filed a first amended petition, joining the Missouri Division of Child Support Enforcement as a party. The two actions were consolidated on October 4, 1994. During the several months the case was pending, Morgan denied Estrada visitation for weeks at a time despite his frequent requests, and offered limited visitation on a few occasions.

On October 4, 1994, at a hearing on motions, the parties made a new verbal visitation agreement which allowed Estrada visitation every weekend and Wednesdays. Then on November 18, 1994, the parties entered into yet another agreement, which was incorporated into an order, whereby the parties were to have joint legal custody of the child, with Morgan being the "temporary custodial parent" and Estrada having visitation three days per week. It also required Estrada to pay $259.00 per month temporary child support to Morgan.

On December 3, 1994, Morgan was in an automobile accident in which she cracked her pelvis, broke a bone in her hand, and sustained other minor injuries. Martin stayed with Estrada after Morgan's accident and until the date of trial on December 12, 1994.

At the time of trial, Morgan was still on crutches and could not hold the child while standing.

On December 19, 1994, the commissioner entered a paternity decree with findings in which Morgan was granted full custody, and Estrada was awarded visitation every other weekend, one evening per week, alternate major holidays, Father's Day and Estrada's birthday, and a four-week summer visitation. The decree also ordered Estrada to pay $259.00 per month as child support, to provide health insurance for Martin, and ordered the parties to divide uninsured medical expenses in the proportion of 64% by Estrada and 36% by Morgan. It further required Estrada to pay $5,356.80 to the State as reimbursement for AFDC payments Morgan had received, and required Estrada to pay $1,427.40 for the guardian ad litem's fees. Morgan was required to pay $500.00 for the guardian ad litem.

Estrada filed a motion for rehearing, following which the trial court adopted the findings and recommendations of the commissioner. Estrada filed a motion to reconsider, set aside the judgement and for new trial which was overruled by the court on January 27, 1995. Estrada timely appealed the orders contained in the paternity decree. Neither Morgan nor the State has responded or filed a brief in this appeal.

█ In his first point on appeal, Estrada contends the trial court erred in awarding sole custody of the child to Morgan and in not awarding sole custody to him because the ruling was against the weight of the evidence and not supported by substantial credible evidence in that (a) the court failed to take into consideration the best interests of the child; (b) the court failed to adequately consider the relevant factors set out in § 452.375; [1] (c) the court failed to give adequate weight to the report and investigation of the guardian ad litem; (d) the court may have given too much weight to Morgan's contentions that Estrada paid no direct child support for Martin and that he had never cared for Martin himself; and (e) the court

---

1. All statutory references are to RSMo 1994.

failed to give adequate weight to case law relating to the custody of illegitimate children.

In reviewing this court tried case, we will sustain the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "An appellate court should set aside a judgment on the ground that it is against the weight of the evidence only 'with caution and with a firm belief that the decree or judgment is wrong.'" *Harris v. Harris*, 803 S.W.2d 167, 169 (Mo.App.1991) (quoting *Jun v. Murphy*, 763 S.W.2d 290, 294 (Mo.App.1988)). In reviewing a contention that the evidence is insufficient, we view the evidence in the light most favorable to the verdict and we defer to the trial court's assessment of credibility. *Ugbaja v. Sumpter*, 821 S.W.2d 557, 559 (Mo. App.1991).

As Estrada claims, the basis for determining child custody is the best interest and welfare of the child and that interest is unaltered by the fact that the child was born out of wedlock. *Harris*, 803 S.W.2d at 169. In addition, the mother of a child does not have a superior right to custody. *Mildred v. Darryl*, 743 S.W.2d 111, 112 (Mo.App.1988). Under § 452.375.2, in considering the best interests of the child, the court is to consider all relevant factors, including, in pertinent part:

(1) The wishes of the child's parents as to his custody;

\* \* \* \* \* \*

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved ...;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

\* \* \* \* \* \*

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

Further, under the statute, it is the public policy of this state to assure children frequent and meaningful contact with both parents and to encourage parents to share in the decision-making and responsibilities of child rearing. § 452.375.3. In order to effectuate this policy, the court shall determine the custody arrangement which will best assure that parents share such responsibility and that frequent and meaningful contact between the child and each parent as is indicated in the best interests of the child under all relevant circumstances. *Id.* Estrada alleges the overwhelming weight of the evidence shows it would be in Martin's best interest to give him, rather than Morgan, sole custody. He points to extensive evidence in the record to support his position.

However, as noted *supra*, we must view the evidence in the light most favorable to the decision. After a careful review of the record, we are not left "with a firm belief that the decree or judgment is wrong." *Murphy v. Carron*, 536 S.W.2d at 32. The court addressed the evidence and explained why it found it was in Martin's best interest to award custody to Morgan rather than to Estrada. It specifically found that Morgan and Estrada could not make joint decisions, and therefore, joint custody would be inappropriate. The court acknowledged the guardian ad litem's recommendation that it was in Martin's best interest to award custody to Estrada based on Morgan's frequent moves after Martin's birth. However, the court did not disregard the guardian's recommendations; it simply declined to follow them, as was its prerogative. *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 385 (Mo. App.1993) ("The court is not bound by the opinion or recommendation of the guardian ad litem"). The court agreed with the guardian that neither parent was unfit to have custody but disagreed with the guardian ad litem's recommendation and found that having considered all relevant factors, it was in

the best interest of Martin that his mother continue to have sole custody of him. Regarding Morgan's frequent moves, the court found Morgan was temporarily living with her father because of the accident but that she permanently resided with her mother. It also emphasized that Morgan had provided Estrada with reasonable visitation except for the two periods in 1994, and found that those denials were upon the advice of her previous attorney. The court also noted Estrada had paid no child support payments to Morgan.

In addition, the court stressed Morgan's history of cooperation in providing Estrada with reasonable visitation, and Morgan testified at trial that she would follow the court's order as to visitation, even if she did not agree with the order. Moreover, the evidence shows, and the court's order so reflected, Estrada's mother will babysit Martin while Morgan and Estrada are working. As we have discussed, *supra*, the policy and goal of the child custody law is to accomplish meaningful contact with both parents. § 452.375.3. Based on the entire record, we cannot say that the decision awarding custody to Morgan is unsupported by substantial evidence or against the overwhelming weight of the evidence.

Estrada further contends the trial court failed to give adequate weight to case law related to the custody of illegitimate children. He cites *David v. Cindy*, 565 S.W.2d 803 (Mo.App.1978), in which the trial court awarded custody of an illegitimate child to the father, recognizing that it was in the best interest of the child to place him into an environment which was better economically. He also cites *Harris v. Harris*, 803 S.W.2d 167 (Mo.App.1991), in which the court awarded custody of the child to the father where the mother had denied the father access to the child, was unemployed, and had moved thirteen times in six and one-half years.

Estrada's argument fails because the reasons given by the *Cindy* and *Harris*[2] courts for awarding custody to the fathers in the cases cited are merely factors to be consid-

ered. The trial court in the case at bar did consider those factors and weighed them against the other relevant factors. Furthermore, there is absolutely no evidence the trial court gave Morgan custody merely because she was Martin's mother. Estrada has failed to show that the trial court disregarded or failed to follow the law in its determination of its custody award.

■ "We give a trial court's determinations in a child custody proceeding greater deference than in any other type of case." *Hamilton v. Hamilton*, 886 S.W.2d 711, 714 (Mo.App.1994). We find the award of custody to Morgan is supported by the evidence, is not against the weight of the evidence and properly follows the law. Estrada's first point is denied.

■ In his second point, Estrada contends the award of visitation is against the weight of the evidence and not supported by substantial credible evidence in that the award did not take into consideration the amount of time Estrada had historically spent with Martin, did not consider Martin's best interest, and did not make provisions for transporting the child. As in the award of custody, visitation is to be determined in the best interest of the child. *See Nichols v. Ralston*, 825 S.W.2d 347, 348 (Mo.App.1992).

Estrada compares the visitation award of every other weekend, one night per week, alternating holidays, father's day, Estrada's birthday, and four weeks in the summer, to the amount of time he had with Martin before the paternity action, which was at least every weekend. According to Estrada's records, he spent 226 days with Martin in 1993. Estrada asserts it is not in Martin's best interest to reduce the amount of time spent with his father. Estrada complains particularly because when Morgan was asked why she requested a more limited visitation schedule than had been in place before, she said, "I just think it's fair." Estrada implies that the court relied on this statement rather than considering Martin's best interest.

---

**2.** *Harris*, upon which Estrada particularly relies, is also distinguishable because in that case, the mother had denied visitation throughout the child's life, had taken and left the child in Texas prior to the hearing, and could not economically support the child even if the father paid appropriate child support.

However, the record contains no evidence that the court made its decision based on what was "fair" or that the court did not consider Martin's best interest when making its visitation order.

While the evidence listed by Estrada in favor of awarding him custody and/or expanding his visitation may be significant, we cannot say the court's order regarding visitation is unsupported by the evidence, nor that it is against the weight of the evidence. We are not left with the firm conviction that the welfare of the child requires some other disposition. *Hamilton,* 886 S.W.2d at 715. We find the award as to visitation was reasonable and supported by the evidence. Point II is denied.

Third, Estrada contends the trial court erred in setting child support at $259.00 per month because this award was against the weight of the evidence, is not supported by reasonable credible evidence and misstated the law in that (a) the court did not have before it all documentation necessary to appropriately calculate support; (b) the court incorrectly imputed income to Estrada; and (c) the court did not take into consideration all relevant factors in assessing support and therefore gave undue weight to the child support guidelines.

▉▉▉ Estrada submitted to the court a Form 14 worksheet and a statement of income and expenses. Morgan presented no Form 14 or other documentation of income or expenses. The use of Form 14 in calculating the child support obligation of parents is mandatory. *Hamilton,* 886 S.W.2d at 716. This is also true in the case of a paternity action. *State, Division of Family Servs. v. Williams,* 861 S.W.2d 592, 595 (Mo.App.1993) ("Child support in paternity actions is to be determined in accordance with Rule 88.01"). Thus, Rule 88.01 and the Form 14 guidelines apply in the case at bar, and they create a rebuttable presumption that the amount calculated under the guidelines is the amount of child support to be awarded. *K.J.B. v. C.A.B.,* 883 S.W.2d 117, 122 (Mo.App.1994). Both parents should submit completed Form

14s and the record on appeal must demonstrate the basis for the Form 14 calculation. *Id.* The trial court's failure to use either party's Form 14 calculations or to indicate how it calculated the child support obligation is reversible error. *Hamilton,* 886 S.W.2d at 716.

In the case at bar, Estrada submitted a Form 14 [3] but Morgan did not. In its order, the court specifically rejected Estrada's Form 14 and substituted its own Form 14 calculation. In the substituted Form 14, the court imputed $800.00 per month income to Morgan (the same amount Estrada had imputed to her in his Form 14). The only difference between the court's Form 14 calculation and Estrada's was that the court calculated his income at $1,404.00 per month rather than the $1,300.00 per month he listed on his Form 14. In other words, the only change made by the court in its substituted Form 14 calculation was to credit Estrada with an additional $104.00 income. The court did not explain why it added $104.00 to Estrada's calculated income.

▉▉▉ In his first subpoint, Estrada is alleging that the trial court did not have sufficient documentation before it and therefore, it could not make a proper presumed child support calculation. To the contrary, the record did contain sufficient evidence for the court to calculate the presumed child support under the guidelines. Estrada submitted a Form 14 to the court in which he listed his income as $1,300.00 and imputed $800.00 income to Morgan. In addition, Estrada testified at trial regarding his income and Morgan admitted at trial that $800.00 would be a reasonable amount of income to impute to her after she recovered from her injuries. Moreover, Estrada admits on appeal that the trial court correctly imputed Morgan with $800.00 income.

▉▉▉ The only credible complaint Estrada could have with the substituted Form 14 is the change made by the trial court to credit Estrada with $1,404.00 in income rather than the $1,300.00 he listed on his Form

---

**3.** Estrada's Form 14 was completed on the assumption he would be granted custody of Martin. This makes no difference in calculating the presumed child support amount, however, because the presumed amount is based on percentages of income, not which party is granted custody.

14. This brings us to his second subpoint, in which he alleges the award is against the weight of the evidence because the court incorrectly imputed income to him. However, the court did not "impute" income to Estrada. The court imputes income to a party when it believes the party is capable of earning a certain amount of income but is choosing not to.[4] This is not what the court did here. Rather than making the determination Estrada was capable of earning more income than the evidence showed he was earning at the time of the trial, the court found from the evidence that he was earning $1,404.00 per month. This finding is supported by the evidence. While Estrada estimated his monthly income to be $1,300.00, he admits this was only an estimate of his income and that his income fluctuated from week to week. He testified he worked up to 48 hours per week at $8.10 per hour and that he anticipated raises every six months. It is apparent the court disregarded the hours in excess of 40 per week, and merely multiplied $8.10 by 40 hours to come up with a weekly wage ($324.00). The court then multiplied the weekly wage by 52 weeks ($324.00 × 52) to come up with annual income of $16,848, and then divided that amount by 12 to obtain the monthly income, $1,404. Thus, the figure of $1,404.00 per month income was within the range supported by the evidence.[5]

 In his third subpoint, Estrada contends the court gave undue weight to the child support guidelines in that it did not take into consideration all factors in assessing support under § 210.841(6), including $125.00 per month support for his two month old daughter, and the order that he pay 64% of the uninsured medical bills and 75% of the guardian ad litem's fees. The rule is clear that the trial court is required to use the Form 14 calculation and is not to deviate from it unless the court finds, on the record, that the Form 14 amount is unjust or inappropriate. *Hamilton*, 886 S.W.2d at 716. As we have already said, the trial court followed the Form 14 guidelines. Thus, the calculations are presumed to be correct unless that amount is unjust or inappropriate.

It is Estrada's contention that the Form 14 amount is unjust and inappropriate and the trial court erred in failing to deviate from it. We disagree. Regarding the $125.00 Estrada says he pays to support his other child, Form 14 allows adjustments for court or administratively ordered child support payments or for a child not the subject of the case but who is in the custody of one of the parties. *State, Division of Family Servs. v. Williams*, 861 S.W.2d at 595; *See* Form 14, Mo.R.Civ.P., Directions For Use, Worksheet, line 2a. Estrada did not contend the $125.00 child support was court-ordered or that he was the custodial parent of his two-month old daughter. He merely estimated his monthly expenses for that child. He did not list this on his own Form 14 which he submitted to the court, nor did he provide proof of these expenses. Consequently, the trial court was

---

4. *See Hudson v. Hudson*, 887 S.W.2d 755, 756 n. 2 (Mo.App.1994) ("In order to prevent a spouse from escaping responsibilities to support minor children, a court may, in proper circumstances, impute a higher income to a spouse if the evidence indicates he or she has the capacity to earn more").

5. We note here that the court did not have to explain why it rejected Estrada's Form 14 and substituted its own Form 14 with the higher income attributed to Estrada. "Rejection" of a Form 14 calculation is not the same as a "rebuttal" of a Form 14 presumed child support amount where the court must make a specific finding that the presumed amount is unjust or inappropriate. *Woolridge v. Woolridge*, 915 S.W.2d 372, 378 (Mo.App.1996). With a rejection, the trial court finds that an item is incorrectly included in the calculation, an amount of

an item included in the calculation is incorrect, or the mathematical calculation is incorrect. *Id.* Rebuttal of the presumed amount, on the other hand, occurs when the trial court determines the presumed amount is unjust or inappropriate, *id.*, and in that case, the trial court must specifically enumerate why the calculation was rebutted as unjust or inappropriate. *Hamilton*, 886 S.W.2d at 716. Where a trial court disagrees and rejects the Form 14 calculations of the parties, the trial court is compelled to make its own Form 14 calculation. *Woolridge*, 915 S.W.2d at 381. When it does so, it is not required to state its reasons for rejecting the parties' Form 14s but it must articulate for the record how it calculated its Form 14 amount. *Woolridge*, 915 S.W.2d at 381. It may do this by completing a Form 14 worksheet and making it a part of the record. *Woolridge*, 915 S.W.2d at 381. This is exactly what the trial court did in the case at bar.

not required to take that support into account. *Id.* Estrada's third point is denied.

■ In his fourth point on appeal, Estrada contends the trial court erred in awarding to the State $5,356.80 as partial reimbursement for support provided for the child because the order was a misstatement of the law and the facts, was against the weight of the evidence and was not supported by substantial credible evidence in that (a) Morgan and the State pled reimbursement of necessaries; (b) no evidence of the value of necessaries was presented by Morgan; (c) there was not sufficient evidence to calculate a state debt; (d) any reimbursement should not have been made retroactive to the child's birth because there was not sufficient credible evidence to support such an award; and (e) the court gave Estrada no credit for the amounts he spent for necessaries for the child.

The order stated:

Petitioner, Annette Morgan, has been receiving state benefits for Martin since the date of his birth and, therefore, is not entitled to an award of past due necessaries or retroactive child support. The State of Missouri, however, is entitled to reimbursement from Respondent for the moneys it expended on behalf of Martin during the time Respondent was not paying child support to Annette Morgan. Based on § 452.340.9 RSMo 1986, Respondent's wages during the relevant periods, and imputing an income of $800.00 per month to Petitioner during the entire period since Martin's birth; [sic] the State is entitled to reimbursement of 18 months at $180.52 and 9 months at $234.16; for a total of $5,356.80.

\*　\*　\*　\*　\*　\*

IT IS FURTHER ORDERED: that the State of Missouri is awarded judgment against Respondent, pursuant to § 452.340.9 RSMo 1986, in the amount of $5,356.80 as partial reimbursement for support provided in [sic] behalf of Martin

Estrada from June 11, 1992 through October 31, 1994.

Estrada contends the trial court erred because it ordered him to reimburse the State under § 452.340.9, which deals with "state debt," when the State did not plead reimbursement for a state debt under that section. Rather, the petition requested Estrada "be ordered to pay sums for the necessaries that Petitioner and the state of Missouri has provided the minor child since the date of the child's birth." Thus, according to Estrada, the State pled reimbursement for necessaries, not reimbursement of a state debt, and therefore, the trial court erred in ordering him to reimburse the State for a state debt. We agree.

In *State v. Hall*, 867 S.W.2d 251, 253 (Mo. App.1993), we held that an action which was clearly brought under the UPA [6] allowing recovery of necessary expenses for support of a minor child did not constitute an action for reimbursement of a state debt under § 454.465.[7] Because neither the term "state debt" nor any reference to § 454.465 appeared in the petition, there was no way to construe the petition as including a claim under § 454.465. *Id.* at 253–54. We stated:

The petition is not ambiguous. Although a certain degree of flexibility is allowed in pleading a cause of action, a party cannot completely stray from a specifically pleaded statutory theory of recovery and claim that the theory intended was an altogether different statutory theory.

*Id.* at 254.

Likewise, in the case at bar, neither the term "state debt" nor any reference to either § 454.465 or § 452.340 appeared in the petition. Rather, the petition specifically requested reimbursement for "necessary expenses," a term applicable under the UPA. This is significant because in an action for reimbursement of necessary support, the movant has the burden of proving the actual amounts of necessary expenses incurred for the support of the child, *id.*, whereas under

6.　Uniform Parentage Act, § 210.817 et seq.

7.　Note that *Hall* refers to § 454.465 rather than § 452.340.9, which is referred to in the order in the case at bar. § 452.340.9 incorporates § 454.465. Thus, *Hall* is applicable.

§ 454.465, there is no such requirement.[8] Thus, the order's designation and calculation of the award of reimbursement to the State were error.

In the case at bar, neither Morgan nor the State provided any evidence of the actual amounts of necessary expenses incurred by Morgan.[9] Furthermore, as in *Hall*, Morgan testified she was not working for most of the time she was collecting AFDC, and therefore it can be inferred she was using the AFDC money to support herself as well as her son. Moreover, the State did not present evidence in this case as to the total amount of AFDC paid. Thus, unlike *Hall*, where we were able to establish the total paid and the amount attributable for necessaries, in the case at bar we are unable to do so. We are therefore confronted with a situation almost identical to that in *Royston v. Stayton*, 859 S.W.2d 276 (Mo.App.1993), where the court reversed the judgment and remanded the cause "to permit evidence of necessaries furnished and the liability of each party for such necessaries." *Id.* at 277. To that end, and consistent with *Royston*, we reverse the judgment to the extent it orders Estrada to pay the State $5,356.80, and remand to permit evidence of necessaries furnished and the liability of the parties for same.

Estrada further contends the trial court should have credited him with the amounts he expended on necessaries for the child. Since we are remanding the case on this issue, we need not address this argument, as the court will have the opportunity to evaluate this evidence in determining the necessaries furnished and the respective liability of the parties.

■ In his fifth point, Estrada contends it was against the weight of the evidence to order unreimbursed medical expenses to be divided by the parties in the proportion of 64% to Estrada and 36% to Morgan in that it did not consider Estrada's other contributions and misstated the law because the court did not properly establish percentages of the parties' income or require evidence of Morgan's expenses. Basically, Estrada contends this is inequitable because, as shown in his income and expense statement which he submitted to the court, his expenses already exceed his income, and Morgan was not required to submit evidence of her expenses. Further, he reargues that the 64/36% allocation which was calculated under the court's Form 14, was incorrect.

Estrada's point is without merit. As we have already discussed under Point III, the 64/36% allocation which was based on the Form 14 guidelines, was proper and is supported by the evidence. We find no abuse of discretion in the trial court's order regarding unreimbursed medical expenses. Point denied.

■ Finally, Estrada contends the trial court's order requiring him to pay $1,427.40 of the guardian ad litem's fees of $1,927.40 was against the weight of the evidence and not supported by the evidence because it misstated the facts and failed to consider all other contributions of the parties. However, the award of the guardian ad litem's fees is discretionary, § 210.842, and there is no evidence that the court did not consider all relevant factors, including the other orders made by the court and Morgan's responsibility in precipitating the action. We find no abuse of discretion. Estrada's final point is denied.

The judgment is affirmed in all respects except as to the award of reimbursement to

---

8. Under § 454.465.1(2), the state debt may be set "by the director in an amount not to exceed the amount of public assistance so provided by the division of family services." Under § 452.340.9, the court is then to determine the amount of reimbursement pursuant to the Form 14 guidelines.

See also *Royston v. Stayton*, 859 S.W.2d at 277 (The trial court should not have relied on the parents' incomes to calculate award of retroactive child support in paternity proceeding, but rather, should have relied on the reasonable value of necessaries supplied to the child by the mother during five years before she filed petition. The law of necessaries, rather than the rule provided in child support guidelines, applies to determine the amount of award of retroactive child support for five-year period before a paternity petition is filed).

9. The court in *Hall* also pointed out that the appellant had not tried the issues under § 454.465 by consent. Likewise, the record does not suggest Estrada tried those issues by consent.

the State. On that point, the case is reversed and remanded to the trial court with instructions to permit evidence of necessaries furnished and the liability of each party for such necessaries.

All concur.