**In re the Marriage of Steven Dwight DOUGLAS and Julie Dawn Douglas.**

**Steven Dwight DOUGLAS, Respondent,**

v.

**Julie Dawn DOUGLAS, Appellant.**

**No. 18809.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 15, 1994.

Nancy Steffen Rahmeyer, Pratt & Fossard, Springfield, for appellant.

W. Henry Johnson, Douglas, Douglas, Johnson & Wood, Neosho, for respondent.

CROW, Judge.

Julie Dawn Douglas ("Julie") appeals from a decree dissolving her marriage to Steven Dwight Douglas ("Steven"). She attacks the joint physical custody plan imposed by the trial court and the amount of child support awarded her.

The parties married June 16, 1990. The only child of the marriage, Kevin Todd Douglas, was born December 2, 1992. According to the pleadings, the parties separated December 4, 1992, the day Julie was released from the hospital following Kevin's birth.

The cause was tried April 6, 1993. At that time, Steven was a police officer for the City of Neosho, earning an annual salary of approximately $15,400. As we understand his testimony, he works five shifts per week from 9:00 p.m. until 5:00 a.m. His duty cycle begins Thursday night and extends through the ensuing Monday night. Consequently, when his shift ends at 5:00 a.m., Tuesday, he is off duty until the next cycle begins at 9:00 p.m., Thursday.

Steven explained that officers can change shifts every four months, i.e., January 1, May 1, and September 1. This is done on a "shift-bid basis," pegged on seniority.

At time of trial, Julie was employed part-time by the Newton County Sheriff's Office. However, she testified she would become a full time dispatcher there beginning April 19, 1993, at a salary of $1,300 per month. She will work five shifts per week; however, they will not be the same hours. On Friday, Saturday and Sunday, she will work from 3:00 p.m. until 11:00 p.m. On Monday and Tuesday, she will work from 11:00 p.m. until 7:00 a.m. Consequently, when her shift ends at 7:00 a.m., Wednesday, she is off duty until the next cycle begins at 3:00 p.m., Friday.

In a praiseworthy effort to structure joint physical custody to accommodate the parties' work schedules, the trial court devised an intricate plan whereby Julie would be "primary custodian" of Kevin, but Steven would have physical custody:

a. From 12:00 noon on the first of Father's days off, i.e. noon of the day on which the last shift of his work ends, until 12:00 noon of the day on which Father's next work shift begins.

b. Alternate weekends from 12:00 noon Saturday until 6:00 p.m. Sunday beginning Saturday, April 24, 1993 and bi-weekly thereafter.

The joint physical custody plan also contains an elaborate scheme for alternating physical custody of Kevin on designated special occasions including birthdays, holidays and some holiday weekends. The Christmas season is covered by yet another carefully detailed provision. Finally, the joint physical custody plan states:

Father shall have custody during the months of June, July and August for a period of two consecutive weeks in each month which may, after the child is two years old, be combined to create a period of four consecutive weeks of custody. Father shall give Mother written notice of the periods of summer custody desired not later than May 1 of each year or the date by which the Mother is required to elect her vacation days, whichever is earlier.

■ The standard of appellate review in Rule 73.01(c),[1] as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), applies to decrees of dissolution of marriage. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). The decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* This standard applies to custody determinations. *Id.*

Julie maintains the joint physical custody plan is not in Kevin's best interest, is unsupported by substantial evidence, and is against the weight of the evidence. One of her contentions, as we understand it, is that she should have been awarded physical custody during the entire span of her off-duty period—7:00 a.m., Wednesday, until 3:00 p.m., Friday. By reason of Steven's duty schedule at time of trial, the plan grants him physical custody from noon Tuesday until noon Thursday.

Julie also complains about the schedule for the Christmas season and the summer provision whereby Steven receives an unbroken two-week period of physical custody in June, another in July, and a third in August.

Julie cites evidence which, according to her, indicates Steven manifested little interest in Kevin from his date of birth until the date of trial. We have studied the evidence and have concluded that while it may arguably support the inference urged by Julie, it is equally susceptible to an inference that Steven's relatively meager contact with Kevin during that period was not due to apathy toward Kevin, but to other factors including a reluctance to confront Julie.

At trial, Julie embraced the concept of joint custody. Her testimony:

Q. ... your husband has asked for joint custody, and has introduced [a joint custody plan]; is that correct? Do you know that?

A. Yes, I've seen it.

1. Rule references are to Missouri Rules of Civil Procedure (1994).

Q. In your mind, do you feel that a joint-custodial arrangement would work between you and Mr. Douglas?

A. Yes, I do.... I believe that he should see the child. The child needs to know his father and see him as much as he can.

Q. Okay. So you would not object to a joint-custodial plan where you have the primary custody of the child; right?

A. Right.

■ The General Assembly has declared it is the public policy of Missouri to assure children frequent and meaningful contact with both parents after the parents have dissolved their marriage. § 452.375.3, RSMo Cum.Supp.1992. The joint physical custody plan here is consistent with that policy.

■ An appellate court will not disturb a trial court's custody determination unless it is manifestly erroneous and the welfare of the child requires a different disposition than that made by the trial court. *Ibrahim v. Ibrahim,* 825 S.W.2d 391, 397[7] (Mo.App. S.D.1992); *In re Marriage of Goostree,* 790 S.W.2d 266, 267 (Mo.App.S.D.1990). With the exception of the summer provision, to be dealt with *infra,* we hold the trial court's joint physical custody plan is not manifestly erroneous and the welfare of the child requires no different disposition.

■ The summer provision, quoted *supra,* does not provide Julie even one unbroken, two-week period of physical custody. In her brief, Julie asserts Steven claims the right to physical custody on his days off each week and on alternate weekends, year-round. The result, says Julie, is that she is barred from taking a two-week vacation with Kevin.

Julie's contention is sound. Nowhere in the summer provision is Julie awarded a period of two consecutive weeks of physical custody. That is manifestly erroneous, as it obviously prevents Julie—nominally the "pri-

mary custodian"—from taking Kevin on a vacation.

Exercising our power under Rule 84.14, we modify the summer provision (paragraph "1.i.," of the joint custody plan on pages 2 and 3 of the decree) so that it reads:

Every year, Mother shall have custody for one period of two consecutive weeks, selected by her, which shall commence no earlier than June 1 and end no later than August 31. Mother shall give Father written notice of this period not later than May 1 of each year or the date by which Father is required to elect his vacation days, whichever is earlier. If Mother gives Father notice in compliance with the preceding sentence, the two-week period selected by Mother shall take precedence over any physical custody rights to which Father would otherwise be entitled. Father shall have custody during the months of June, July and August for a period of two consecutive weeks in each month which may, after the child is two years old, be combined to create a period of four consecutive weeks of custody. None of these periods shall conflict with Mother's two-week period of custody, provided Mother has given notice in compliance with the second sentence in this paragraph. Father shall give Mother written notice of the periods chosen by him not later than May 15 each year.

■ The above provision, like any other custody order, may be modified pursuant to § 452.410, RSMo Cum.Supp.1992.

We turn now to child support, the subject of Julie's second point.

■ Julie testified her child care expense for Kevin would be approximately $200 per month. At trial, she presented a Form 14,[2] received in evidence as Exhibit B. It is not in the record on appeal and has not been filed separately as permitted by Rule 81.16. Steven also presented a Form 14 at trial,

---

**2.** The version of Civil Procedure Form 14 and the directions for its use in effect at the time the decree was entered appear in Missouri Rules of Court (1993), pp. 380–84. By order of the Supreme Court of Missouri on November 23, 1993, that version will be repealed effective April 1, 1994, and a new Civil Procedure Form 14, to-

gether with directions for use, comments, and a schedule of basic child support obligations will take effect. The new version appears at pages XXI–XXXI in the December 14, 1993, advance sheet, West's Missouri Cases, 863 S.W.2d, and in Missouri Rules of Court (1994), pp. 384–94.

received in evidence as Exhibit 3. It is likewise absent from the record and has not been filed separately.

Because of the absence of Exhibits B and 3, we may consider them immaterial to the issues on appeal. Rule 81.16. Nonetheless, because the support of a child is involved, we will review Julie's second point as best we can, using what is here.

In the transcript, Julie's lawyer[3] tells the trial court Exhibit B shows Julie's gross monthly income as $1,300 and Steven's as $1,267. The lawyer also says Exhibit B shows child-care expense of $200.

■ In her brief, Julie states Exhibit B shows Steven should pay her $296 per month child support. In his brief, Steven acknowledges Exhibit B shows this. Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *In re Marriage of Swofford*, 837 S.W.2d 560, 563[6] n. 2 (Mo.App.S.D.1992).

In the transcript, Steven's lawyer states Exhibit 3 shows Julie's gross monthly income as $1,000 and Steven's as $1,267. The lawyer continues: "Pursuant to the chart, this comes to $350. . . ." We infer the lawyer was referring to the Schedule of Basic Child Support Obligations for one child whose parents have a combined monthly gross income exceeding $2,200 but less than $2,300.

In his brief, Steven states Exhibit 3 shows he should pay Julie $196 per month child support. In her brief, Julie acknowledges Exhibit 3 shows this. We therefore assume it does. *Nastasio*, 295 S.W.2d at 119[1]; *Swofford*, 837 S.W.2d at 563[6] n. 2.

The decree orders Steven to pay Julie child support of $196 per month "plus a sum equal to one-half of the amount of child care expense incurred by [Julie] for work related child care when such care cannot be provided by either parent or grandparents of the child."

Julie's second point reads:

The trial court's adoption of the Form 14 submitted by [Steven] which calculated partial child support in the amount of $196.00 per month is against the weight of the evidence and not supported by substantial evidence in that the court's calculation failed to consider the cost of health insurance for the minor child, the uncovered medical expenses of the minor child, and the work-related child care expenses of $200.00 per month of the minor child wherein the evidence at trial showed that the minor child was not covered by any health insurance policy, that [Steven] failed to pay non-covered medical expenses for the minor child and that the work-related child care costs would amount to $200.00 per month for the minor child.

Before considering the merits of the point, we note a possible flaw in the provision of the child support order purporting to award Julie half the expenses she will incur for work-related child care when it cannot be provided by her, Steven or the grandparents.

Such expenses cannot be calculated from the decree. Determining them will require extrinsic evidence. Whether that renders the provision unenforceable would be a difficult issue to resolve. *See: Echele v. Echele*, 782 S.W.2d 430, 433–37 (Mo.App.E.D.1989), for a comprehensive study of the cases on the subject, and *Liberty v. Liberty*, 826 S.W.2d 381, 384–85 (Mo.App.E.D.1992), which held a provision there regarding medical and hospitalization insurance was too vague to be enforced. However, for the reasons that follow, it is unnecessary to decide the vagueness issue here.

■ Rule 88.01 requires the use of Civil Procedure Form 14 in determining child support. Form 14 expressly provides for inclusion of the custodial parent's reasonable work-related child care costs in calculating the presumed child support amount. The terms of Rule 88.01 are mandatory, and courts must either award child support in conformity with the result obtained by using Form 14 or make a finding on the record that an award of such amount, after consideration of all relevant factors, is unjust or

---

**3.** The lawyer representing Julie in this appeal is not the lawyer who represented her at trial.

inappropriate. *Watkins v. Watkins,* 839 S.W.2d 745, 748[8] (Mo.App.W.D.1992); *Hamilton v. Hamilton,* 817 S.W.2d 937, 939 (Mo.App.W.D.1991).

Here, the trial court evidently found there would be occasions when Julie had physical custody of Kevin and would be scheduled for duty by her employer, thereby making it necessary for someone else to care for Kevin. While there was evidence that such care could sometimes be provided by Steven or the grandparents, there was no assurance they would always be available. Indeed, the trial court's child support order demonstrates the court believed there would be instances when Julie would incur work-related child care costs. The trial court concluded Julie should bear half those costs and Steven the other half.

Neither Form 14 nor the directions for its use authorize the order the trial court entered. The trial court is to determine the custodial parent's reasonable work-related child care costs, less any federal income tax credit, and include such amount in the Form 14 calculations.

Here, although the trial court apparently believed Julie would have work-related child care costs, the trial court did not determine their amount and did not include it in the Form 14 calculations. Thus, the trial court neither calculated child support per Form 14 nor made a finding that the amount so calculated, after consideration of all relevant factors, was unjust or inappropriate.

Because the trial court did neither, and because the parties did not agree on the amount of Julie's monthly work-related child care costs, the child support award must be reversed and the cause must be remanded to the trial court for determination of child support in accordance with Rule 88.01 and Form 14. *Tuning v. Tuning,* 841 S.W.2d 264, 267 (Mo.App.S.D.1992).

Julie's second point, as we have seen, also assigns error in the trial court's alleged failure to consider the cost of health insurance for Kevin in determining child support. Because we are reversing the child support order and remanding for determination of child support anew, we need not address the health insurance issue. The parties can present their respective contentions to the trial court on remand. In that regard, we note comment "(A)" following the current version of Form 14 addresses health insurance coverage in connection with child support orders. In the version of Form 14 to become effective April 1, 1994, health insurance cost for a minor child is specifically included in calculating the presumed child support amount.[4]

The decree of dissolution of marriage is affirmed except (1) paragraph "1.i.," of the joint custody plan on pages 2 and 3 of the decree is modified as set forth earlier in this opinion, and (2) the child support order on page 5 of the decree is reversed and the cause is remanded to the trial court for redetermination of child support consistent with this opinion.

FLANIGAN, P.J., and PREWITT, J., concur.

---

4. Footnote 2, *supra.* Line 4.c., on the new version of Form 14 is the line for health insurance cost for the minor child. Directions for that item appear in the "Directions for Completion of Form 14," page 386, Missouri Rules of Court (1994).