Evelyn Nan WOOLRIDGE, Respondent,

v.

Virgil E. WOOLRIDGE, Appellant.

No. WD 50986.

Missouri Court of Appeals,
Western District.

Feb. 13, 1996.

Linda Faye Turley Dycus, Kansas City, for appellant.

Kenneth E. Jones, Kansas City, for respondent.

Before FENNER, C.J., P.J., and
SPINDEN and SMITH, JJ.

SMITH, Judge.

The marriage of the parties was dissolved on March 20, 1995. The trial court, *inter alia,* awarded the parties joint legal custody of their unemancipated minor child with primary physical custody and child support of $75.00 per month to appellant. Although appellant was awarded physical custody of the parties' minor child, respondent was awarded the parties' marital residence with appellant awarded other assets in lieu of his marital interest in the residence. Appellant raises two points on appeal: 1) the trial court erred in awarding the marital residence to the respondent in that it misapplied § 452.330; and, 2) the trial court erred by awarding child support in an amount less than the amount calculated pursuant to Rule 88.01 utilizing Form 14 without first finding the calculated amount to be unjust or inappropriate. We affirm as to the award of the marital residence and reverse and remand with directions as to the award of child support.

### Facts

Appellant and respondent were married on July 16, 1970. Immediately after marriage, appellant and respondent resided at 11812 Drury, Kansas City, Missouri. Eight years prior to the parties' marriage, in 1962, appellant personally built the home at this location. In 1975, five years into the marriage, appellant refinanced the marital home and jointly titled the property.

Appellant and respondent have one minor child, Matthew, born March 6, 1980. In 1991, appellant and respondent began experiencing marital difficulties. Some time that same year, appellant and Matthew moved into a room separate from respondent. They also ate and washed their clothes separately from respondent.

In June of 1993, appellant and Matthew moved out of the marital home. On September 9, 1993, respondent filed a Petition for

Dissolution of Marriage seeking division of property, custody of the minor child, and child support. On October 27, 1993, appellant filed his Answer and Counter–Petition for Dissolution of Marriage also seeking division of property, custody of Matthew and child support.

At the time appellant built the marital home, the house and property were worth $26,000. The house and land were appraised at $33,500 at the time of refinancing. In January 1994, during the dissolution proceedings, the house and property were appraised at $68,000.

Appellant made all mortgage payments on the marital home, paid all the utilities, and bought groceries with marital funds until November 1993. Respondent's contributions to the marital home consisted of painting, wallpapering, refinishing a bathroom, and replacing a deck.

On March 7, 1995, the trial court awarded the parties joint legal care, custody and control of the minor child, Matthew, with actual physical custody to appellant. The court ordered respondent to pay appellant the sum of $75.00 per month as support of said minor child.

Both parties presented Income and Expense Statements, in addition to Form 14 worksheets pursuant to Rule 88.01. Both parties' Form 14's reflected appellant as the custodial parent. Appellant asked the trial court for child support in the amount of $181.00 per month based on his Form 14 worksheet. Respondent's Form 14 amount was $172.50 per month. In deviating from the Form 14 amounts calculated by the parties, the trial court did not make a finding on the record as to whether it determined the presumed correct child support amount pursuant to Form 14, and, if it did, whether it was rebutted as being unjust or inappropriate.

The trial court awarded the marital home to respondent and ordered her to refinance the unpaid balance owed on the home. Additionally, appellant was ordered to execute a Quit Claim Deed to transfer his interest in the home in exchange for certified funds in the amount of $19,000.

### Standard of Review

Provisions in a divorce decree will be affirmed unless: 1) there is no substantial evidence to support it; 2) it is against the weight of the evidence; 3) it erroneously declares the law; or, 4) it erroneously applies the law. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 818 (Mo. banc 1984); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The party challenging a divorce decree bears the burden of demonstrating error. *Cofer v. Price–Cofer,* 825 S.W.2d 369, 373 (Mo.App. 1992).

### Points on Appeal

#### Point I. Award of Marital Residence

On his first point, appellant claims that the trial court misapplied the law in awarding respondent the marital home in that: 1) the trial court failed to consider the desirability of awarding the family home, or the right to live therein for reasonable periods, to appellant who was awarded custody of the parties' minor child pursuant to § 452.330; 2) the trial court failed to award appellant his nonmarital portion of the family home as required by § 452.330; and, 3) the trial court failed to consider the contribution of appellant in the acquisition of the marital home as required by § 452.330.

Section 452.330, RSMo 1994, provides in pertinent part:

**Disposition of property, factors to be considered.—**

1. In a proceeding for dissolution of the marriage or legal separation ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of the spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

An appellate court will only interfere with the trial court's decision in dividing marital property if "the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion." *Dodson v. Dodson,* 855 S.W.2d 383, 385 (Mo.App. 1993). In dividing marital property, the trial court is vested with great flexibility and far reaching power, and no specific formula exists respecting the weight to be given to the factors required to be considered under § 452.330. *Id.*

We will address the claims under Point I in the order presented in appellant's brief.

### A. Award to Custodial Parent

■ Appellant claims that in awarding the marital residence to respondent the trial court misapplied the law in that it did not take into consideration that he was the custodial parent as required by § 452.330. In support of his claim, appellant cites *Henderson v. Henderson,* 746 S.W.2d 99 (Mo.App.1988).

Section 452.330 by its clear terms does not mandate the award of the marital home to the custodial parent. It only requires the trial court to consider the desirability of awarding the home to the custodial parent and to weigh it along with the other factors enumerated. Appellant's reliance on *Henderson* is misplaced. In *Reed v. Reed,* 775 S.W.2d 326, 329 (Mo.App.1989), this court held that *Henderson* only recognized as a factor to be considered in awarding marital property the desirability of awarding the marital residence to the custodial parent, but did not mandate it.

There is nothing in the record to indicate that in awarding the marital home to respondent, the trial court did not take into consideration the desirability of awarding the marital home to the custodial parent. From the record it can be inferred that the trial court weighed that factor along with other relevant factors, including the fact that appellant was in much better financial shape than respondent; that an emancipated child, 18 year old Rebekah who was pregnant, was still residing in the home with respondent, both of whom had resided in the home for a long period of time; and, that both parties had contributed to the accumulation of equity in the home.

On this point, we find appellant failed to carry his burden to demonstrate that the trial court did not apply the law correctly and that its judgment was against the weight of the evidence.

### B. Award of Nonmarital Interest

■ Appellant claims the trial court failed to award him part of the marital residence as nonmarital property as required by § 452.330. Appellant relies on *Hoffmann v. Hoffmann,* 676 S.W.2d at 825, and the "source of funds" rule adopted therein. Quoting from appellant's brief at page 10, "Although the property was retitled into the joint names of Father and Mother, the trial court was not precluded from applying the 'source of funds' rule." Appellant's belief as to the law is incorrect.

■ In *Hoffmann* the Supreme Court did adopt the "source of funds" rule for determining the character of property as either marital or nonmarital. *Id.* at 825. However, the adoption of the "source of funds" rule in no way abolished in Missouri the theory of "transmutation" which allows a spouse by agreement, either express or implied, or by gift, to transmute an item of nonmarital property into marital property. *Kramer v. Kramer,* 709 S.W.2d 157, 159 (Mo. App.1986); *Stephens v. Stephens,* 842 S.W.2d 909, 913–14 (Mo.App.1992). The "source of funds" rule and "transmutation" are not inconsistent with each other when determining the character of property, but come into play in different fact situations. *Id.* A spouse transmutes nonmarital into marital property by placing it in joint names. *Id.*

In this case, appellant readily admits that the marital residence was placed in joint names. As a result, the character of the property was transmuted from nonmarital to marital property. Id. Thus, appellant did not have a nonmarital interest in the marital residence for the trial court to award to him as claimed.

### C. Failure to Consider Contributions of Appellant

■ Appellant claims the trial court in awarding the marital residence to respondent failed to take into consideration his premarital and marital contributions in acquiring the marital home. We disagree.

In support of his claim, appellant cites *Gremaud v. Gremaud*, 860 S.W.2d 354, 357 (Mo.App.1993). *Gremaud* held that transmutation of separate property into marital property does not preclude the trial court from considering the premarital contributions of a spouse in dividing property. *Id.* In other words, transmutation is used to determine the character of property, not how the property should be divided. Consequently, the trial court could take into consideration appellant's premarital contributions in awarding the marital home. However, there is nothing in the record to indicate that the trial court failed to consider appellant's premarital contributions.

The marital home was built by appellant and his brothers in 1962, eight years prior to the marriage of the parties, and was valued at $26,000 at that time. The home was refinanced in 1975 and placed in joint names. The home had a value of $68,000 at the time of divorce with equity of $54,000 which was split equally by the trial court between the parties. Payments were made on the mortgage during the course of the marriage from the wages of appellant which were marital property. For most of the marriage, respondent did not work outside the home, but contributed substantially as a homemaker throughout. When she did work, she contributed to the maintenance and repair of the home. At the time of divorce, appellant earned $3,140 per month while respondent earned $1,473. This was a marriage of long duration with no marital misconduct. Under such circumstances an equal division of marital property would be anticipated and is what occurred here.

There is nothing in the record to indicate that the trial court misapplied the law by failing to consider the factors set forth in § 452.330 or abused its discretion in awarding the marital residence. The award was just and warranted under the circumstances.

Point I is denied. The trial court's judgment awarding the marital residence to respondent is affirmed.

### Point II—Child Support

■ For his second point on appeal, appellant claims the trial court erred in awarding child support to him in an amount which was less than the amount calculated pursuant to Rule 88.01 utilizing Form 14 without first finding that the calculated amount was unjust or inappropriate as required by the rule.

Respondent concedes in her brief that the trial court's award of child support deviates from the Form 14 amounts calculated by the parties and that the decree is silent as to why. Although respondent asserts in her brief that both parties were advised of the court's reasons for the deviation, those reasons were never articulated for the record. Inasmuch as the decree and record are silent as to why the court deviated from the Form 14 calculations of the parties, that portion of the court's judgment awarding child support must be reversed and remanded with directions. *Hamilton v. Hamilton*, 886 S.W.2d 711, 716 (Mo.App.1994); *Myers–Geiger v. Geiger*, 878 S.W.2d 925, 927 (Mo.App.1994).

In remanding with directions, we must decide what additional findings are required of the trial court. In that regard, three questions are raised: (1) Is the trial court required to determine the presumed correct child support amount pursuant to Rule 88.01 utilizing Civil Procedure Form No. 14?; (2) Is the trial court required to do its own correct Form 14 calculation?; and, (3) If the trial court is required to do its own Form 14 calculation, is it required to make findings for the record as to its calculation?

For the answers to the questions raised, we must look to §§ 452.340.7 and 452.340.8

and Rule 88.01 which govern Form 14 calculations. Sections 452.340.7 and 452.340.8, RSMo 1994, provide in pertinent part as follows:

§ 452.340.7. Not later than October 13, 1989, the Missouri supreme court *shall* have in effect a rule establishing guidelines by which any award of child support shall be made in any judicial or administrative proceeding. Said guidelines shall contain specific, descriptive and numeric criteria which will result in a computation of the support obligation. (emphasis added).

§ 452.340.8. Beginning October 13, 1989, there shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of the guidelines established pursuant to subsection 7 of this section is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, after considering all relevant factors, including the factors set out in subsection 1 of this section, shall be sufficient to rebut the presumption in the case.

In compliance with § 452.340.7, the Supreme Court passed Rule 88.01 which provides in pertinent part:

When determining the amount of child support to order, a court or administrative agency shall consider all relevant factors, including:

. . .

There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded in any judicial or administrative proceeding for dissolution of marriage, legal separation, or child support. It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct if the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration

of all relevant factors, is unjust or inappropriate.

■■■ The guidelines or factors set forth in Rule 88.01 are the same as those in § 452.340.1. Both § 452.340.7 and Rule 88.01 mandate the consideration of the guidelines in all awards of child support. The use of Form 14 in calculating child support is mandatory. *Hamilton,* 886 S.W.2d at 716. The presumption in Rule 88.01 provides for the automatic consideration of the guidelines in a Form 14 computation.

■■■■ Sections 452.340.7 and 452.340.8 and Rule 88.01 do not specifically address the questions we raise here and must be interpreted for their intent. In interpreting statutes and rules, the same principles of construction are used. *Adams v. Boring,* 826 S.W.2d 867, 870 (Mo.App.1992). The primary principle is to ascertain the intent of the legislature and Supreme Court from the language employed and to give effect to that intent. *Wolff Shoe Co. v. Director of Revenue,* 762 S.W.2d 29, 31 (Mo. banc 1988). It is necessary to apply the rules of construction where the language is not clear and is ambiguous. *Jones v. Director of Revenue,* 832 S.W.2d 516, 517 (Mo. banc 1992).

In order to answer the questions raised above, it is necessary to discuss the differences between **"rejecting"** a Form 14 calculation by a party as being **incorrect** and **"rebutting"** the Form 14 presumed correct child support amount as being **unjust or inappropriate.** Although sometimes confused, the two are different and have different implications when determining the required findings by the trial court. Not appreciating the distinctions can lead to an erroneous assumption that any deviation from the Form 14's submitted by the parties in awarding child support is due to "rebuttal" of a Form 14 amount, without considering the possibility of "rejection."

■■■ **"Rejection"** of a Form 14 calculation by a party occurs when the trial court finds that: 1) an item is incorrectly included in the calculation; 2) an amount of an item included in the calculation is incorrect; or, 3) the mathematical calculation is incorrect. **"Rebuttal"** of the presumed correct child

support amount calculated pursuant to Form 14 occurs when the trial court determines the amount is unjust or inappropriate after consideration of all relevant factors.

Perhaps the most instructive manner in which to make clear the distinctions between "rejection" and "rebuttal" is to consider the factors used in making those determinations. It is a case of Form 14 factors which are used in calculating the correct Form 14 amount ("rejection") versus Form 14 and non-Form 14 rebuttal factors used in determining if the correct Form 14 amount is unjust or inappropriate ("rebuttal").

▆▆▆▆▆▆ **"Rejection."** Civil Procedure Form No. 14 is captioned *PRESUMED CHILD SUPPORT AMOUNT CALCULATION WORKSHEET.* The Form 14 worksheet and its directions for completion mandate which items are to be considered in the calculation and constitute a "formula" for determining the presumed correct child support amount as envisioned by § 452.340.7 and Rule 88.01. *In re Marriage of Douglas,* 870 S.W.2d 466, 470 (Mo.App.1994); *Vehlewald v. Vehlewald,* 853 S.W.2d 944, 951 (Mo.App. 1993). And, although Rule 88.01 leaves it to the court to determine whether a Form 14 item should be included in a Form 14 calculation under a given factual situation and the correct amount of the item to be included, the "formula" to be employed and the factors to be considered in calculating the presumed correct child support amount is not discretionary. *In re Marriage of Douglas,* 870 S.W.2d at 470. As a consequence, in determining whether to "reject" a Form 14 amount as not being correctly calculated, the trial court only considers Form 14 worksheet factors, the items which are properly included in the calculation and the correct amount of each, and does not take into consideration non-Form 14 factors. *Id., Davidson v. Davidson,* 872 S.W.2d 606, 607 (Mo.App. 1994); *Anderson v. Anderson,* 861 S.W.2d 796, 801 (Mo.App.1993); *Michel v. Michel,* 834 S.W.2d 773, 774 (Mo.App.1992). In doing so, the court is to be guided by the worksheet's directions for completion and comments for use, and the evidence in the case.

▆▆▆ **"Rebuttal."** Rule 88.01 provides that the presumed correct child support amount calculated pursuant to Form 14 may be rebutted upon a finding that it is unjust or inappropriate after consideration of all relevant factors. Section 452.340.8 provides the presumed correct child support amount may be rebutted upon a finding that it is unjust or inappropriate after consideration of all relevant factors, including the factors set out in § 452.340.1. Unlike a Form 14 calculation, there is no mandatory worksheet or formula to be used in determining whether a Form 14 amount is unjust or inappropriate. Consequently, the trial court in making a rebuttal determination may take into consideration non-Form 14 factors. For example, the Form 14 worksheet does not take into consideration debt. However, debt has been held to be a relevant factor to be considered in "rebutting" the presumed correct child support amount. *In re Marriage of Short,* 847 S.W.2d 158, 162 (Mo.App.1993).

▆▆▆ We first address question one: "Is the trial court required to determine and find for the record the presumed correct child support amount pursuant to Rule 88.01 utilizing Civil Procedure Form No. 14?" In answering the question, we find the intent of the Supreme Court in establishing Rule 88.01 was to provide a two-step procedure to determine child support. In step one, the trial court is required to determine and find for the record the presumed correct child support amount pursuant to a correct Form 14 calculation. Step one is a mathematical calculation the mandatory use of which insures that the child support guidelines will be considered in every case as mandated in § 452.340.7 and Rule 88.01. In step two, the trial court is required to consider whether to rebut the presumed correct child support amount, as found by the court, as being unjust or inappropriate after consideration of all relevant factors. § 452.340.8; Rule 88.01. Step two permits the trial court to exercise its broad and sound discretion in the final determination of child support awards. The rule as written and as interpreted here furthers the intent of the rule to promote fair and consistent child support awards in this state. In interpreting Rule 88.01 as requiring the trial court to determine the correct

Form 14 amount in each case, we rely on three reasons.

The first reason can be found in the Form 14 worksheet directions for completion which require that the parties complete a Form 14 in every case. If the rule did not contemplate a determination of the presumed correct child support amount in every case, such a requirement would not have been included by the Supreme Court. Additionally, this court has previously held that the parties are required to submit Form 14 worksheets in every case of child support and that their failure to do so is reversible error. *Hamilton*, 886 S.W.2d at 716; *Umphenour v. Umphenour*, 831 S.W.2d 764, 766 (Mo.App.1992); *Luker v. Luker*, 861 S.W.2d 195, 199 (Mo. App.1993). Similarly, this court has also held that in the case of a party failing to submit a Form 14, that party is denied appellate review of alleged error concerning the determination of child support. *Luker v. Luker*, 861 S.W.2d at 199; *Hackmann v. Hackmann*, 847 S.W.2d 193, 194 (Mo.App. 1993).

The second reason can be found in reading § 452.340.8 and Rule 88.01 together. Section 452.340.8 provides that the amount of the child support that results from the mandatory application of the guidelines established pursuant to § 452.340.7 is presumed to be correct. Section 452.340.7 requires that the guidelines "shall contain specific, descriptive and numeric criteria which will result in a computation of the support obligation." Consistent with and in furtherance of the statutory requirements is the presumption in Rule 88.01 which provides that an amount calculated pursuant to Form 14 is presumed correct and automatically takes into consideration the guidelines. Reading the statute and the rule together, we find Rule 88.01 requires a determination of the presumed correct child support amount pursuant to a correct Form 14 calculation in every case in order to insure that the child support guidelines are considered as mandated. Since there can be only one presumed correct child support amount in a given case, the statute and rule taken together clearly contemplate that the trial court will make that determination using the

Form 14 worksheets submitted by the parties as aids.

■■■ The third reason can be found in the language of the rule concerning rebutting the presumed correct child support amount calculated pursuant to Form 14. Rule 88.01 provides that the presumed correct child support amount may be rebutted upon a finding that it is unjust or inappropriate. Therefore, it is axiomatic that before there can be a "rebuttal" of the presumed correct child support amount, the amount must, in fact, be correctly calculated. *Anderson*, 861 S.W.2d at 801; *Michel*, 834 S.W.2d at 779. Without the determination, there is nothing to rebut. The procedure set forth in the rule to rebut the Form 14 amount clearly contemplates the determination of one presumed correct child support amount in every case.

As to why the trial court's determination of the correct Form 14 amount must appear in the record can be found in the necessity of making a record that properly frames the factual and legal issues permitting meaningful appellate review to avoid reversal and remand. *Myers–Geiger*, 878 S.W.2d at 927; *Umphenour, 831 S.W.2d at 766.* As discussed above, from the sole fact that the trial court deviated from the Form 14's submitted, the appellate court cannot assume the amount of the child support awarded resulted from "rejection" or "rebuttal." In fact, both may have occurred. It is possible the deviation resulted from the trial court first "rejecting" the Form 14's submitted; then determining the correct Form 14 amount by doing its own calculation; and then, after consideration of all relevant factors, "rebutting" the presumed amount found by the trial court. In any case, without a determination on the record as to the Form 14 presumed correct child support amount, meaningful appellate review would be doubtful at best in cases of deviation.

■■■ We now consider question two: "Is the trial court required to do its own Form 14 calculation?" As found above, the trial court is required to determine and find for the record the correct Form 14 amount in every case. In determining the amount, it is unnecessary for the trial court to do its own Form 14 calculation ***provided*** it agrees with

and accepts a Form 14 amount calculated by a party as the presumed correct amount. Where the trial court agrees with and accepts a Form 14 of a party, it would be duplicitous for the trial court to do its own. However, if the trial court disagrees with and "rejects" the Form 14 calculations of the parties, there is no determination of the presumed correct child support amount pursuant to Form 14 as required, *Michel,* 834 S.W.2d at 779, in which case, the intent of Rule 88.01 is entirely circumvented, unless the trial court is compelled to do its own correct Form 14 calculation. *Hamilton,* 886 S.W.2d at 716; *Davidson,* 872 S.W.2d at 607. Therefore, we find that, although the parties are required under Rule 88.01 to submit Form 14 worksheets to assist the trial court in determining the correct Form 14 calculation, if the trial court finds them to be incorrect and "rejects" them, then it has a duty under the rule to do its own correct Form 14 calculation and the failure to do so is reversible error. *Hamilton,* 886 S.W.2d at 716.

■ We now address question three above: "In cases where the trial court is required to do its own Form 14 calculation, is it also required to make findings for the record as to its calculation?" Unlike the case of "rebuttal," Rule 88.01 is silent as to what findings are necessary in the case of "rejection." However, accepting the fact that the trial court has a duty under Rule 88.01 to determine and find for the record the presumed correct child support amount and to do its own correct Form 14 calculation when it "rejects" those of the parties, we find it is implicit in the rule that the trial court articulate for the record how it calculated its Form 14 amount. *Hamilton,* 886 S.W.2d at 716. We find there are at least three compelling reasons for this holding.

First, as found above, Rule 88.01 requires that the child support guidelines be considered in determining every award of child support and the use of Form 14 to insure that consideration. Unlike other determinations required of trial courts which are not governed by mandatory, specific formulas, child support determinations are governed by Rule 88.01 which mandates the use of Form 14. Form 14 is a specific mathemati-

cal formula the use of which insures consideration of the child support guidelines, which "contain specific, descriptive and numeric criteria." *See* §§ 452.340.7 and 452.340.8 and Rule 88.01. Because it is the Form 14 calculation or "formula," not the amount calculated, that insures the guidelines have been considered as required, the calculation or "formula" in and of itself has great significance, separate and apart from the amount calculated. Given that significance, if the trial court was allowed to merely state the amount of its Form 14 calculation without making a record as to how it was calculated, appellate review as to whether the guidelines were followed by doing a correct Form 14 calculation would be next to impossible, effectively destroying the mandate of § 452.340.7 and Rule 88.01 that the guidelines be followed in every case.

Second, it is illogical to find that although the trial court in the case of "rejection" is required to do its own Form 14 calculation, it is only required to do it "mentally" and not for the record. It is not only illogical but inconsistent with Form 14 directions for use and previous holdings of this court which require the parties to submit "written" Form 14 worksheets for the record. *Hamilton,* 886 S.W.2d at 716; *Umphenour,* 831 S.W.2d at 766; *Luker,* 861 S.W.2d at 199.

Third, where the trial court "rejects" the Form 14's submitted without findings as to its Form 14 calculation, appellate review of whether the trial court's calculation was correct and was supported by the record, in most instances, would be reduced to a scavenger hunt, *Michel,* 834 S.W.2d at 779, demanding reversal and remand. *Myers–Geiger,* 878 S.W.2d at 927.

■ In summary and for the reasons stated, we find that under Rule 88.01 the trial court in all cases involving the award of child support is required to determine and find for the record the presumed correct child support amount calculated pursuant to Civil Procedure Form No. 14. The determination and finding of the amount can be done by either accepting for the record a Form 14 amount calculated by a party, or in the event it "rejects" the Form 14 amounts of the parties as being incorrect, doing its own

Form 14 calculation. The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record, which we recommend as the most efficient and surest way of preserving the record, or by articulating on the record how it calculated its Form 14 amount. Required findings for the record can be done by separate written findings, findings in the judgment entry, or by oral findings on the record. The lack of specific findings as to how the trial court calculated its Form 14 amount will not automatically trigger a reversal on appeal on that issue, provided the record clearly indicates how the trial court arrived at its Form 14 amount.

As a cautionary note, in making its Form 14 determinations and findings as to "rejection" and "rebuttal," the trial court should be mindful of the fact that depending on the circumstances of a particular case, one or both can occur. Each situation requires the trial court to make different Form 14 determinations and findings for the record in accordance with this opinion.

Based on our reading of the cases, our holding here is consistent with our holding in *Hamilton v. Hamilton*, 886 S.W.2d 711, 716 (Mo.App.1994) which was decided after *Scoggins v. Timmerman*, 886 S.W.2d at 139 (Mo. App.1994). In *Hamilton*, the court held that "[t]he trial court's failure to use either [party's] Form 14 computation or to indicate how it calculated the child support obligation is reversible error." 886 S.W.2d at 716. In *Scoggins*[1] this court attempted to pull together and clarify the decisions of this court that dealt with the necessary Form 14 findings of the trial court where its child support award deviated from the Form 14's submit-ted by the parties. In *Scoggins*[2] the court's analysis was based on the assumption that the deviation resulted from "rebuttal." It neither articulated nor considered "rejection" in its holding or the required findings in that instance, nor did it directly address the questions raised here. As a consequence, we do not believe this holding is contrary to the holding in *Scoggins* requiring its reversal or the reversal of subsequent decisions[3] of this court that relied on *Scoggins* and the "rebuttal" analysis. The holding in this case merely expands on the holding in *Scoggins* by extending the analysis to "rejection" and the resulting required Form 14 determinations and findings. The holding here does not change the holding in *Scoggins* as to the necessary Form 14 determinations and findings by the trial court where it "rebuts" the Form 14 presumed correct child support amount *without* first "rejecting" the Form 14's of the parties.

As noted above, this opinion does not change the holding in *Scoggins* that a trial court in "rebutting" the presumed correct child support amount as being unjust or inappropriate is *not* required to articulate the basis for that finding. However, to properly frame the factual and legal issues for appeal so as to avoid needless reversals and remands, we would strongly suggest that where the trial court does "rebut" the presumed correct child support amount, it consider including in its findings why it found the amount to be unjust or inappropriate. In making such a finding, the trial court would only be articulating for the record what it is already required to do mentally by Rule 88.01.

1. In *Scoggins*, the court held that *Harding v. Harding*, 826 S.W.2d 404, 407 (Mo.App.1992); *Clare v. Clare*, 853 S.W.2d 414, 415 (Mo.App. 1993); and, *Summerville v. Summerville*, 869 S.W.2d 79, 83 (Mo.App.1993), should be disregarded to the extent they conflicted with its holding. 886 S.W.2d at 139.

2. In *Scoggins v. Timmerman*, 886 S.W.2d 135, 137 (Mo.App.1994), the court, in support of its holding, cited four cases which it stated held that "before awarding less child support than that prescribed pursuant to Form 14, a trial court is **only** required to find, after considering all relevant factors, that the Form 14 presumed amount is unjust or inappropriate." (**emphasis added**). In so holding, the court did not consider "rejection" as a possibility for the trial court's deviation.

3. *Monsees v. Monsees*, 908 S.W.2d 812 (Mo.App. 1995); *Hembree–Shanaberger v. Shanaberger*, 903 S.W.2d 202 (Mo.App.1995); *Hudson v. Hudson*, 887 S.W.2d 755 (Mo.App.1994), were all deviation cases that used a "rebuttal" analysis only. *Taylor v. Taylor*, 908 S.W.2d 361 (Mo.App.1995), was *not* a deviation case in that the trial court awarded child support in an amount calculated by a party pursuant to Form 14.

Finally, to assist the trial court in making its required findings for the record as to Form 14 decisions and to help prevent needless reversals and remands, the trial court may want to consider including something similar to the following findings in its judgment entries:

### Presumed Child Support

[**without rebuttal**] The court finds that the presumed correct child support amount as calculated by the [**petitioner, respondent, or court**] pursuant to § 452.340.8, R.S.Mo.1994, Supreme Court Rule 88.01, and Civil Procedure Form No. 14 is $_____ per month; and, that after consideration of all relevant factors pursuant to § 452.340.8 and Rule 88.01, is not rebutted as being unjust or inappropriate.

[**with rebuttal**] The court finds that the presumed correct child support amount as calculated by the [**petitioner, respondent, or court**] pursuant to § 452.340.8, R.S.Mo. 1994, Supreme Court Rule 88.01, and Civil Procedure Form No. 14 is $_____ per month; and, that after consideration of all relevant factors pursuant to § 452.340.8 and Rule 88.01, is rebutted as being unjust or inappropriate in that [**state the factual basis for rebutting, such as extraordinary debt**] _____; and, that after consideration of all relevant factors pursuant to § 452.340.1, R.S.Mo.1994, and Rule 88.01, the reasonable and necessary child support amount is $_____ per month.

By requiring trial courts to do their own Form 14 calculations for the record in cases of "rejection," we do not wish to unduly burden them. However, to require otherwise would be to ignore the intent of §§ 452.340.7 and 452.340.8 and Rule 88.01 and would be expecting the least from a group from which we have grown to know we can expect the most. There is no basis for believing that the trial judges of this state are not properly motivated to do and capable of doing what is necessary to insure that the child support guidelines are properly considered, allowing them in each case to arrive at a child support award that is fair and consistent with other awards. In truth, many of the trial judges, based on their experiences with Form 14 calculations, are already making the determinations and findings in question recognizing the virtues of the same. It takes no great stretch of the imagination to understand that experienced trial judges have no passion for reducing appellate review to a scavenger hunt, thereby risking reversals and the misfortunes of remands, when the same can be avoided with very little effort on their part.

As to Point II, the judgment for child support is reversed and remanded with the trial court to make findings and enter its judgment awarding the correct child support in a manner consistent with this opinion.

### Conclusion

The judgment of the trial court is affirmed in part and reversed and remanded in part.

All Concur.