**Robert BEDWELL, Respondent,**

v.

**Jeannie BEDWELL, Appellant.**

**No. WD 58187.**

Missouri Court of Appeals, Western District.

April 10, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 2001.

Application for Transfer Denied Aug. 21, 2001.

Mary Corinne Corley, Kansas City, for appellant.

Daniel Green, Jefferson City, for respondent.

PAUL M. SPINDEN, Chief Judge.

On July 28, 1999, the circuit court issued a judgment to dissolve Robert and Jeannie Bedwell's 12–year marriage. The Bedwells had sons aged nine and seven, and the judgment granted joint legal custody and primary physical custody to Robert Bedwell. The circuit court awarded Jeannie Bedwell visitation every other weekend and one weekday night during the school year, in addition to primary custody during each summer vacation. The circuit court ordered Jeannie Bedwell to pay $100 a month in child support. Jeannie Bedwell appeals the judgment's child custody and child support provisions.

She argues first that the judgment was fatally deficient because it did not include specific findings regarding domestic violence. She contends that the evidence established a history of domestic violence during the marriage and that § 452.375 [1] requires the circuit court to issue a specific finding.

The judgment does not contain any findings regarding domestic violence. Neither party requested specific findings. According to Rule 73.01(c), we infer that the court decided the issue in harmony with the judgment. Hence, we presume that the circuit court deemed the evidence insufficient to support a finding that domestic violence occurred during the Bedwell's marriage.

■■■ We review the circuit court's conclusion to determine whether it was supported by substantial evidence. *Mund v. Mund,* 7 S.W.3d 401, 403 (Mo. banc 1999). Missouri courts have consistently ruled that the circuit court has greater deference in child custody matters than in other matters. *Posey v. Posey,* 950 S.W.2d 334 (Mo.App.1997). The circuit court has the better opportunity to determine witnesses' credibility and weigh all of the evidence. We view the evidence and permissible inferences in the light most favorable to the circuit court's determination. *Mund,* 7 S.W.3d at 403.

Section 452.375.2(6) requires a specific finding if (1) the circuit court "finds that a pattern of domestic violence has occurred," and (2) "the court also finds that awarding custody to the abusive parent is in the best interest of the child." Because the circuit court granted Robert Bedwell primary physical custody of their children, Jeannie Bedwell argues that the court was compelled to state on the record how it reached this decision. She quotes portions

---

**1.** All statutory citations refer to the 2000 Revised Statutes, unless otherwise stated.

of testimony in which she said that she believed Robert Bedwell was stalking her. She testified that he was physically violent to her, but described only one occasion. Robert Bedwell denied ever physically harming his wife and alleged that she had physically attacked him once, which she denied. After the parties separated, Robert Bedwell called state authorities about Jeannie Bedwell's care of the children. A Division of Family Services investigator testified that all inquiries found allegations of abuse or neglect to be unsubstantiated.

The circuit court confronted contradictory and inconclusive evidence. Jeannie Bedwell relies primarily on the *Mund* case, in which the Supreme Court found that an implicit finding that domestic violence had not occurred was against the weight of the evidence. 7 S.W.3d at 403. *Mund* is factually distinguishable. The court stated, "[T]he parties admitted to the occurrence of numerous physical alterations between them during their relationship." *Id.* Both parties in *Mund* testified about injuries they incurred. *Id.* Both of the Bedwells alleged physical confrontations, and both denied assaulting each other. Being aware of the circuit court's opportunity to judge the witnesses' credibility, we affirm its determination that insubstantial evidence supported finding a pattern of violence. The evidence did not require a specific finding under § 452.375.2(6). *See Winslow v. Winslow*, 14 S.W.3d 690 (Mo.App.2000).

■ Section 453.375.13 provides:

If the court finds that domestic violence or abuse, as defined in sections 455.010 and 455.501, RSMo, has occurred, the court shall make specific findings of fact to show that the custody or visitation arrangement ordered by the court best protects the child and the parent or other household member who is the victim of domestic violence or abuse.

In view of the circuit court's implicit finding that domestic abuse did not occur, it did not err in not making a specific finding concerning this issue. We have already determined that the circuit court's conclusion was not against the weight of the evidence.

■ Jeannie Bedwell argues next that the circuit court's award of custody to Robert Bedwell was not in the children's best interests and was against the weight of the evidence. Section 452.375.2 directs the circuit court to "determine custody in accordance with the best interests of the child" and lists eight factors the court must consider. The judgment in this case does not explicitly address the children's best interests or the statutory factors; however, we are entitled to presume that the circuit court acted in compliance with the General Assembly's mandate. *Flathers v. Flathers*, 948 S.W.2d 463, 471 (Mo. App.1997).

■ The evidence supported the circuit court's granting custody of the children to Robert Bedwell during the school year and custody to Jeannie Bedwell during the summer. Both wanted primary custody and home studies verified that both would provide suitable homes. Both wanted the children to continue attending the same school. Jeannie Bedwell admitted that she withheld visitation for three months. This may have influenced the circuit court's evaluation of the fourth factor, "[w]hich parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent." Section 452.375.2(4). After that period, however, the children enjoyed regular visitation with their father. On this and other statutory factors, the circuit court heard conflicting or inconclusive evidence. We support the judgment because the circuit court is "in

the unique position to determine the credibility, sincerity, character, and other intangibles of the witnesses." *Chapin v. Chapin,* 985 S.W.2d 897, 902 (Mo.App.1999).

■ Jeannie Bedwell's third point claims that the circuit court judge plainly erred by not recusing himself *sua sponte.* She contends that his in-court statements reflect "an obvious and disturbing bias against [her]." She did not preserve the point but asks us to review it as plain error under Rule 84.13.

■ Rule 84.13(c) grants us authority to consider "plain errors affecting substantial rights ... when [we find] that manifest injustice or miscarriage of justice has resulted" from the plain error. The rule is a conundrum. It grants us authority to review plain error only if we find manifest injustice or a miscarriage of justice, but making a finding of manifest injustice or a miscarriage of justice seems tantamount to review. The Supreme Court suggested in *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995), that it intended for the enigmatic rule to mean that we should first examine plain error "facially," and review the matter only if we discern a substantial ground for believing that manifest injustice or miscarriage of justice has resulted from plain error. We adopt that paradigm in this case. We previously defined "plain error" as evident, obvious and clear error. *Matter of Moore,* 885 S.W.2d 722, 727 (Mo.App.1994), and *Ryder Farms, Inc. v. Hullinger Trucking, Inc.,* 837 S.W.2d 575, 576 (Mo.App.1992).

Looking at the record facially, we note that several of the circuit court judge's comments indicate his irritation at redundant evidence.[2] In one instance, he interrupted a witness to question her involvement in a discussion between the Bedwells. We do not discern from these comments a substantial ground for believing that manifest injustice or miscarriage of justice. Nor do we perceive any of them to constitute evident, obvious and clear error. We need not review the matter any further.

■ In her final point, Jeannie Bedwell contends that the circuit court erred in ordering her to pay $100 a month in child support, because it did not follow proper procedure to determine this amount. The judgment states:

Considering all statutory factors, [c]hild support in the amount of $100 per month is a fair and reasonable sum for Respondent to pay to Petitioner as and for the support of the minor children of the parties. The Court finds that application of Form 14 is inappropriate. Husband to bear all expenses of parochial school. Husband to maintain medical insurance coverage on the minor children and pay all premiums.

Later, the circuit court provides that it used Form N° 14 in calculating the amount of child support, "but specifically finds it inappropriate." Robert Bedwell acknowledges that the circuit court did not declare a Form N° 14 amount.

Section 452.340.9 states that the amount calculated using child support guidelines is presumed to be the correct amount of child support. To rebut this presumption, the circuit court must find that the Form N° 14 amount is unjust or inappropriate, after consideration of the statutory factors

---

2. The judge urged one witness to "get on with it," and told another, "I mean, I'm sorry, but I've been at this all morning long. And that isn't [going to] prove whether one person ought to have custody, if the man's a little anti-social."

deemed relevant in determining child support. Rule 88.01; Section 452.340.9.

 In *Woolridge v. Woolridge,* 915 S.W.2d 372 (Mo.App.1996), cited with approval by the Supreme Court,[3] this court held that the circuit court must state the Form No 14 amount on the record to insure meaningful appellate review. *Id.* at 379. "Step one is a mathematical calculation the mandatory use of which insures that the child support guidelines will be considered in every case as mandated." *Id.* at 379. The circuit court may accept the parties' calculations or reject them, in which case the court must calculate its own Form N° 14 amount. *Id.* at 381–82. In this case, the judgment includes no specific Form N° 14 amount calculated by the parties or the court.

The record also contains no information as to how the circuit court determined that $100 a month was an appropriate amount for Jeannie Bedwell to pay. In this respect, the judgment is not automatically reversible for being insufficiently explanatory. *Id.* at 382. While we only recommend that the circuit court divulge how it arrived at the appropriate child support amount when it rebuts Form N° 14, inclusion of a Form N° 14 amount in the record is mandatory. It aids us in deciding whether the circuit court's deviation is reasonable.

The record is insufficient to show us whether the circuit court's finding the Form N° 14 amount inappropriate was reasonable. More importantly, it fails to state, through written or oral findings, the presumed correct child support amount. For this reason, we reverse the judgment as to child support and remand the case to the circuit court for proceedings consistent with this opinion. We affirm the judgment in all other respects.

EDWIN H. SMITH and THOMAS H. NEWTON, Judges, concur.

---

**3.** *See Neal v. Neal,* 941 S.W.2d 501 (Mo. banc 1997).